# Richmond.

## BARBOUR v. THE COMMONWEALTH.

### MARCH 12th, 1885.

1. WITNESSES - *Disqualification.*—Conviction of petit larceny does not in this State disqualify one as a witness.

2. IDEM—*Impeachment.*—A witness cannot be impeached by proof of particular acts and offences committed by him.

3. CRIMINAL PRACTICE—*Evidence.*—Evidence that the hands, knife, &c., of the prisoner were smeared with blood immediately after the homicide, is admissible, though there was no chemical analysis.

4. IDEM—*Idem—Cumulative.*—After the argument has commenced it is too late to admit mere cumulative evidence.

5. IDEM—*Counsel—Prisoner's Statement.*—Much latitude is allowed counsel in argument, but they should not relate to the jury the prisoner's version as *the statement of the accused*, where the latter could not himself testify.

6. IDEM—*Case at bar.*—The facts exhibit a case of murder in the first degree.

Error to judgment of circuit court of Albemarle county rendered May 17th, 1884, and sentencing to death by hanging, one Joseph Barbour, who had been found guilty of murder in the first degree, by the verdict of the jury upon the trial of an indictment for the murder of one Randall Jackson.

Opinion states the case.

*Davis & Harman*, for the plaintiff in error.

*Attorney-General F. S. Blair*, for the commonwealth.

LACY, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of Albemarle county, rendered at the May term 1884.   The plaintiff in error was indicted, tried and convicted of murder in the first degree, for the killing of Randall Jackson on the 17th day of November, 1883.

Upon his arraignment in the county court, the plaintiff in error elected to be tried in the circuit court, in which court he was tried accordingly.   Upon the trial numerous exceptions were taken to the rulings of the circuit court.   The first exception, and first assignment of error here, was as to the admissibility of the evidence of Robert Lewis, the only witness to the killing.   The objection to the admission of the testimony of Robert Lewis was based upon the fact that he had been convicted of petit larceny. and the record of the conviction was offered to sustain the objection; but the court rejected the record of the conviction of the said witness, and admitted him to testify in the case.   This is the question to be disposed of first in this case here.   Does a conviction of petit larceny disqualify a witness from testifying in any future case?

By the common law a person convicted of an infamous offence was incompetent afterwards to be a witness.   These offences were treason, felony, and all offences founded in fraud, and which come within the general notion of the *crimen falsi* of the Roman law.

Mr. Bishop says, speaking of this incapacity of a witness because of conviction of an offence deemed infamous: "As a consequence of the final judgment for treason, or felony, or any misdemeanor of the sort known by the term *crimen falsi*, whereof all are commonly called infamous crimes, we have the doctrine that persons convicted of any of these are not permitted to testify, when objected to, as witnesses in our courts.   They are supposed to be so regardless of truth that it would be unjust to

compel litigants to suffer from what they assert even under oath. Some embarrassment attends the attempt to particularize the crimes which are infamous within this rule. Larceny is, because it is a felony; so is the knowingly receiving of stolen goods; and so, at the common law, is even petit larceny.

"Larceny, such as is known as grand larceny, is a felony, and petit larceny is a misdemeanor; but before this distinction was recognized between grand and petit larceny, a party convicted of petit larceny was competent in England by the statute of 31st George III, chapter 35. And this distinction between grand and petit larceny is now well established by statute in many states, which render the crime of petit larceny no longer infamous."

Mr. Bishop, in referring to this change of the rule as to petit larceny in some of the states, by operation of statutes which renders that crime no longer infamous, cites the decisions of the courts of New York, Indiana, Kentucky and Virginia. Citing upon this question the case in this court of *Uhl* v. *The Commonwealth*, 6 Gratt., 706. In that case the circuit court rejected the evidence of the former conviction of the witness for petit larceny, and permitted him to testify; and in that case this court refused the writ of error asked for. But there is no opinion filed.

The effect of that decision, it is claimed, is weakened by the fact that the conviction for petit larceny of the witness was in another state; but the decision does not appear to rest upon that ground, because throughout our laws convictions in other states, anywhere in the United States, are expressly recognized, it being provided that a conviction of a person of petit larceny, formerly convicted in the United States, &c., shall be punished, &c.

In the state of Maryland there are numerous decisions, ancient and modern, enforcing this incapacity to testify upon convictions in other states and countries, and upon reason it would seem that a person would be as much degraded by con-

viction of an infamous offence in one state as in any other. The courts have not uniformly decided this question the same way. In some states the conviction in another state is not recognized in the determination of this question.

*Uhl's case* was decided in 1849, and the Statute of 1847–8 provided for the cases in which conviction for infamous offences should disqualify a witness. It is there provided, that "a person convicted of felony shall not be a witness, unless he has been pardoned or punished therefor," &c.

Offences punishable by death or confinement in the penitentiary under our law are declared to be felonies. All other offences of every sort are grouped together by the legislature and called misdemeanors. Petit larceny is a misdemeanor, the punishment of which is prescribed by statute, and by express enactment of the law it can be punished in no other way than as is prescribed by statute.

The common law rule as to disqualification of a witness, on account of previous conviction of an infamous offence, has been suspended in this state by statutory enactments, as indeed it has been to a great degree in England by acts of Parliament; and while it is otherwise in some of the states, in Virginia a conviction for petit larceny does not disqualify a witness from appearing as such in a case, and the circuit court having properly so decided, the first exception must be overruled.

As to the second exception, the attempt of the plaintiff to impeach the witness, by proving particular acts and offences, committed by him, was properly overruled by the circuit court and his efforts properly limited to proof of general character for truth, etc.

The hand of the accused appearing immediately after the homicide to be stained on the inside and the outside, and daubed between the fingers with blood, and the knife in his pocket, with which the killing was done, being smeared with blood, so that it came off on the hands of all who touched it; the evidence of these facts was properly admitted, without any chemi-

cal analysis to ascertain the obvious and indubitable fact that it was blood, and not simply something else that looked red, and looked liked blood without really being blood.

The offer to re-open the evidence and introduce a witness to prove that the chief witness for the commonwealth was drunk the night of the homicide, after the argument had commenced and in great part concluded, was rejected properly by the circuit court. That question had been elaborately considered, and many witnesses examined concerning it during the trial, and the new testimony then offered was merely cumulative, and came too late.

The fifth ground of exception is, that the counsel for the accused was refused the leave of the court to detail to the jury the prisoner's account of the whole affair, *as the prisoner's statement.* This practice in this particular form has never prevailed in this state, and it does not commend itself. The accused did not have the right to testify as a witness in the case; he was entitled to be heard in his own defense, and to be confronted with his accusers, &c., but no good reason presents itself for introducing the practice of relating his version at second hand, *as his statement,* laid before the jury by his counsel, by leave of the court. Counsel for the accused in such a case in this state are allowed, and avail themselves of all possible latitude in making their arguments, and few of them it is reasonable to believe, ever fail to present to the jury the prisoner's version, with every possible inflection and variation. But until the legislature shall in its wisdom see fit to permit the accused to be sworn as a witness in his own behalf, there is no authority for the introduction of the practice here contended for.

The seventh exception is as to the refusal of the court to set aside the verdict and grant the prisoner a new trial, upon the ground that the evidence did not justify a verdict of murder in the first degree.

This motion was properly overruled, and is in fact disposed of by the foregoing. The case as made out upon the testimony of

all the witnesses, the evidence of Robert Lewis being admitted, makes out a deliberate and willful murder, entirely without provocation of any sort, and is briefly this:

A peaceful citizen, unoffending in all respects, is walking along the highway on his way to his home and family, in company with three others. The prisoner, meeting with them just as they were leaving the little town where they had been to make their Saturday night purchases, after collecting their week's wages, requests one of them to return to the store, or whatever place it could be found, and take a drink. The deceased remonstrates, says his family is alone, and he must go on as it is getting late. The prisoner, without other provocation, thrusts a knife into his throat, with the remark, "what have you got to do with it." The death wound is then inflicted, the main artery in the neck is severed, and the artery in the arm so cut that it discharged its contents. The deceased cried out in his death agony, and the murderer fled, disguising himself as he flees by throwing away conspicuous parts of his dress; is quickly captured, reeking with the blood of his victim, and still clasping the bloody weapon; and offers no better excuse for the dark deed than that he was a stranger to the deceased.

Our statute declares, that any willful, deliberate and premeditated killing, is murder in the first degree. The evidence shows this act to be such a killing, and the verdict of the jury was right, and the court did not err in refusing to set it aside.

This disposes of the questions which are necessary to be specially considered. We do not perceive any error in the instructions given by the court in the case. Upon the whole case we are of opinion to affirm the judgment of the circuit court of Albemarle county.

JUDGMENT AFFIRMED.