FLOYD PEARCE, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error.*

### Division A.

### Opinion Filed March 12, 1927.

1. The right to take the depositions of witnesses beyond the jurisdiction of the Court in behalf of a person charged with felony is secured by statute, Section 6085, Revised General Statutes.

2. Where a commission is desired to take the testimony of a witness beyond the jurisdiction of the Court in a criminal case, the affidavit which the statute requires to be made must present facts reasonably calculated to satisfy the judgment of the Court that such testimony is material and necessary to the defense.

3. The Court makes the order for issuing a commission to take the testimony of a witness beyond the jurisdiction of the Court and the clerk issues the commission upon the application of the accused counsel.

4. Evidence of improper relations between the accused and the wife of his victim are admissible against the accused upon a trial for murder, but not in his behalf in palliation of his crime.

5. Exclamations of the deceased made by him immediately after he was wounded so close in point of time as to form part of the transaction are admissible as part of the *res gestae.*

6. Cross-examination of a witness is allowed for the purpose of testing his opportunity and capacity for observation, his memory, and disposition to speak the truth and must be confined to matters brought out in the direct examination of him and upon matters related to the issue.

7. Where in a trial upon the charge of murder the defendant sets up in his evidence the defense of self-defense, that he was attacked by the deceased with a deadly weapon and stood in reasonable fear of great bodily harm, and offers evidence to show that he was wounded upon the face and head in several places, it is competent for him by circumstantial evidence to endeavor to show the character of the weapon used by the deceased in the attack.

8. Language in an oral argument before the jury which is designed to arouse the emotions of the jurors and divert their minds from the issues in the case should not be used by the prosecuting attorney. Where there is evidence of the existence of a motive produced by illicit relations between the accused and a female relative of the deceased it is, of course, proper in appropriate language to denounce the motive, but it should not be assumed to exist in the absence of evidence to show it.

Judgment reversed.

A Writ of Error to the Circuit Court for Columbia County; Hal W. Adams, Judge.

*Cone & Chapman* and *Guy Gillen,* for Plaintiff in Error;

*J. B. Johnson*, Attorney General, and *Roy Campbell*, Assistant, for the State.

ELLIS, C. J.—Floyd Pearce was indicted for the murder of L. J. Adams, in Columbia County, and convicted of manslaughter.

The first two assignments of error rest upon an order denying a motion for a continuance. The grounds of the motion, as accurately as the same may be gathered from the record, seem to be that there were two witnesses living in Georgia whose testimony was desired and that about a month before the trial counsel obtained the Court's order "permitting and allowing the defendant a commission or commissions to take the testimony of material witnesses absent from the State of Florida"; that affidavits and interrogatories had been filed with the clerk with the view of procuring the testimony of the two witnesses and that thereafter neither judge, clerk, state attorney, nor counsel for the defendant did anything, took any step, made any effort to procure the depositions of the witnesses.

The facts in the case were as follows: The offense was alleged to have been committed on the 14th day of November, 1925. Six days thereafter the defendant was indicted. On the 14th day of December the defendant moved to quash the indictment and the motion was overruled. Counsel for the defendant then moved for a continuance and applied to the Court for an order "allowing the defendant to have a commission or commissions to take the evidence of material witnesses absent from the State." What order was made by the Court, if any, upon the motion for a continuance and the application for an order to take the depositions of the witnesses the record does not disclose. The defendant was then arraigned and pleaded not guilty.

Twenty-eight days thereafter, on January 12, 1926, the case came on for trial and counsel for the defendant again moved the Court for a continuance upon the ground of the absence of a witness who resided in Georgia.

There is nothing to show what the witness would testify, except what was contained in the affidavits filed on December 14th; how the defendant knew it; why the testimony of the witness had not been procured; what exertion of mind or body had been made to procure the testimony, further than the filing of interrogatories with the clerk on December 14th to be propounded to the witness nor what affidavits, if any, had been made to show that the defendant could not safely go to trial without the testimony of the witness.

In connection with the last motion for a continuance, the ruling on which is assigned as error, the clerk was sworn and testified that on December 14, 1925, an "affidavit was presented by the defendant as well as the interrogatories for a witness by the name of H. L. Harrison" and that he had issued no "commission as required and as requested by the defendant" and that the State Attorney had filed no cross interrogatories in "connection with that application." The clerk testified to a like situation as to the interrogatories which had been filed to be propounded to a witness, "Homer or Bud Rhoden." He also testified that neither the "defendant nor his counsel had made such application" for the issuance of the commission referred to; nor did either of them prepare the commission and bring it to him; that "nothing had been done since December 14, 1925."

The right to take the deposition of witnesses beyond the jurisdiction of the Court in behalf of a person charged with felony is secured by Section 6085, Revised General Statutes of Florida, 1920. Under that section the Court

has no discretion in the matter of issuing a commission to take testimony, but the affidavits required by the section must present facts reasonably calculated to satisfy the judgment of the Court that such testimony is material and necessary to the defense. See Newton v. State, 21 Fla. 53, Hodge v. State, 29 Fla. 500, 10 South. Rep. 556.

The Court makes the order for issuing the commission. The actual issuing of the commission is done by the clerk whose duty is ministerial. State *ex rel.* Kehoe v. McRae, 49 Fla. 389, 38 South. Rep. 605; Clements v. State, 51 Fla. 6, 40 South Rep. 432.

The practice is the same as that prescribed for civil cases. Section 6089, Revised General Statutes, 1920.

The record shows that the Court made the orders for commissions to take the testimony of both Harrison and Rhoden. The orders were dated December 14, 1925, and directed the depositions to be filed in Court on or before the 11th day of January, 1926. There was no fault, therefore, on the Court's part. The commission should issue upon the date named in the application whether the State Attorney filed cross interrogatories or not. See 2746, Revised General Statutes, 1920.

Therefore, the failure of the State Attorney to file cross interrogatories contributed nothing to the defendant's discomfort. The clerk is required by statute to issue the commission at the time mentioned in the application, Section 2746, *supra,* but as no application was made to him he cannot be said to be at fault. The defendant then can rest his complaint only upon the failure of his own counsel to secure for him whatever benefit the statute was designed to bring to him, and that failure is not ground for a reversal of the judgment, at least, in the absence of a stronger showing than was made in this record.

The motion for a continuance made when the case was

called for trial on January 12, 1926, had no ground for its support in the failure to obtain the deposition of the witnesses, Harrison and Rhoden. The other grounds that the witnesses were absent and their testimony material could not avail because so far from showing diligence in trying to procure that testimony the record discloses the contrary to be true.

The third and fourth assignments of error present no reversible ground. Dr. L. J. Adams was killed by the defendant who shot him with a pistol. The wife of Dr. Adams three days before the shooting was in one of the stores of the business section of the City of Lake City and met the defendant, who tried to talk with her. She told him that her husband objected to the defendant speaking to her. Over the defendant's objection she was permitted to testify that she told her husband about the defendant trying to talk with her that morning.

That the testimony was irrelevant and immaterial is apparent, but that it was prejudicial to the defendant is as obscure as its irrelevancy is obvious. No improper words passed between the parties; the defendant spoke to her and she requested him not to do so as her husband objected, thereupon the defendant left her presence.

The case is wholly unlike the situation that existed in either Johnson v. State, 24 Fla. 162, 4 South. Rep. 535; Childers v. State, 74 Fla. 288, 77 South. Rep. 99, or Phillips v. State, 88 Fla. 112, 101 South. Rep. 204.

Those cases may be authority for the proposition that the defendant can obtain no palliation for his crime by showing his illicit relations with the wife of his victim, but certainly not for the proposition that such relation may not be shown by the State to account for the motive of the defendant. However, the testimony of Mrs. Adams showed no such relation between her and the defendant, and to discuss the

point upon the supposition that because the defendant spoke to her and her husband objected to such attention there were salacious relations between them is to do both of them an injustice.

Some criminal cases seem to be tried upon the assumption that if the wife of either deceased or defendant appears in the scene in what may be considered a questionable relation with the wrong husband the circumstances is substance for either State or defense accordingly as to which gets to it first.

The viewpoint of counsel for the plaintiff in error is not clear. Their client was charged with murder; his defense was self-defense, that is that the deceased attacked him in such manner as that prudence required that defendant should strike to kill. Now, an illicit relation between him and the wife of deceased would be a circumstance against him and proper to be shown to account for motive or premeditation and would therefore weaken his defense of self-defense, but, as no such relation was shown by the testimony of Mrs. Adams at that stage of the case, and on the other hand what she said tended to show an unreasonable jealousy on the part of her husband directed against the defendant, the circumstances to which she testified would be favorable to the defendant as tending in support of the defense that the deceased made the first attack.

The fifth and sixth assignments of error question rulings which the assignments recite were made in relation to the testimony of a witness named C. W. Barwick. No objection at all of any kind was taken to the testimony of that witness; but a witness named R. H. Justice, called by the State, was permitted to testify, over the defendant's objection, that immediately after the deceased and the defendant were separated from each other when the difficulty occurred, the former said: "Oh, my God, I am shot." The

refusal to strike that testimony was made the basis of the fifth assignment. The sixth assignment rests upon an objection by the State to a question propounded on cross-examination of the witness which sought to elecit information as to the "approximate weight" of a man the witness saw at the scene of the homicide and who had "blood on him." The first objection was not sound because the exclamation of the deceased immediately after he was shot that he had been shot was part of the *res gestae*. See Lambright v. State, 34 Fla. 564, text 580, 16 South. Rep. 582. There is no merit in the sixth assignment. The question was not in cross of any matter brought out in the direct examination. The witness had not identified the defendant as the person who shot the deceased nor had he said that the man with "blood on him" had done the shooting.

The assignments of error numbered from seven to nineteen inclusive attack rulings of the Court upon objections made by the State to questions propounded to witnesses by the defendant's counsel.

Assignments numbered twenty and twenty-one rest upon the Court's ruling refusing to exclude certain evidence offered by the State to impeach the testimony of Clyde Hammond, a witness for the defendant.

There is no merit in the seventh assignment because the mental condition, whether normal or abnormal, of the defendant when he was taken to a physician's office that the wounds he had received might be dressed appears to have no relation to the issue.

A witness for the defense named Tom Avery testified that about fifteen minutes after the difficulty he went to the place where it occurred. About ten or twelve others had already arrived. He was asked if he found anything there. Objection by the State was sustained. In the absence of the jury the Court ascertained that what the wit-

ness found was "A piece of a pair of knucks," which had blood on it, but the witness did not know whether it was the blood of man or animal. The Court held the evidence to be inadmissible.

A physician had testified for the defense that shortly after the difficulty he and another physician were called upon to treat certain wounds upon the head and face of the defendant, about twelve or fifteen in number; that stitches were taken in one or two of the wounds and the others were treated with iodine. The wounds were slight and superficial in character but the defendant had lost a good deal of blood because of them. Those wounds the defendant had received in the difficulty he had with Dr. Adams. The defense was self-defense. In other words, it was the defendant's contention that he had been attacked by the doctor who in his assault upon him used a weapon likely to produce death of which the defendant stood under the circumstances in reasonable fear. It was permissible to introduce evidence, direct or circumstantial, of the character of weapon, if any, which the deceased may have used.

In the case of State v. Henry, 51 W. Va. 283, 41 S. E. Rep. 439, where the defendant was tried for murder, a hammer was found in a field near which the body was found; apparent blood stains were on the hammer and hair was found upon it. The Court admitted the evidence because it tended to show that it was the instrument with which the killing had been done and was proper to go to the jury to have such weight as in their judgment it merited. Somewhat in line with the above is the case of State v. Bradley, 67 Vt. 465, 32 Atl. Rep. 238, where a man was killed by a stab in the breast. The day following a knife was found in the possession of the defendant which, under a glass, "seemed stained with a reddish color on the blade." The evidence was admitted.

It was not necessary that the stains on the "piece of knucks" were conclusively shown to have been human blood. See White v. State, 133 Ala. 122, 32 South. Rep. 139; Barbour v. The Commonwealth, 80 Va. 287, 2 Ency. of Ev. 548; State v. Henry, *supra*.

We are not unmindful of the provisions of Section 2812, Revised General Statutes 1920, which prohibits the reversal of a judgment on the ground of an improper admission or rejection of evidence unless upon an examination of the entire case it appears that the error complained of has resulted in a miscarriage of justice. It is impossible to say, with any degree of certainty, that if the evidence of the finding of a "piece of a pair of knucks" near the scene of the difficulty had been admitted for consideration by the jury through the testimony of the witness Avery that the jury would not have accounted for the wounds on the head of the defendant upon the theory that the deceased had attacked him with metallic knuckles. At any rate, the defendant was deprived of the testimony of his witness on that matter. If it was a material circumstance logically related to the defense and of a nature calculated to support it, its exclusion was error which made for, if it did not in fact produce, a miscarriage of justice.

Assignments of error numbered ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen and nineteen all rest upon the exclusion of evidence relating to knuckles which were found near the scene of the difficulty soon after it occurred, and which a witness for the defendant, named Riley Douglass, testified he saw lying upon the ground at the scene of the difficulty immediately after it occurred.

If the evidence sought to be elicited by the questions had been admitted the defendant's defense of self-defense would have been materially supported. A difficulty occurred upon

17—Vol. 93

a popular street in the city. Two men of some prominence were engaged in it. One a physician, who only a short while—a few minutes—before, while in a barber shop, said, according to one witness, that he had been looking for the defendant and applying an offensive epithet to the latter's name, said he would get him when he saw him. Those words in connection with the epithet which was applied to the defendant, if they were uttered by the deceased, could bear but one construction and that consistent with a formed purpose to attack the defendant with a lethal weapon. If netallic knuckles were found at or near the scene soon after the difficulty the circumstance was explanatory of the threat and the existence of wounds on the head and face of the defendant. At least, the jury might have so considered it; and if they had so considered it the defendant's defense of imminent danger to himself when he fired the shots that killed the deceased would have been materially strengthened.

We are, therefore, of the opinion that the Court erred in these several rulings and that the errors were material and substantially affected the defendant's right to have witnesses testify in his behalf. Sec. 11, Declaration of Rights, Constitution.

An incident occurred at the trial which is made the basis of assignment of error numbered twenty-two. One of the State's counsel, known to this Court as a lawyer of much experience, ability and influence, in the course of his argument before the jury made some remark about "the invasion of the American home." The defendant's counsel objected to the remark, but when the Judge's attention was called to it he seemingly justified it by remarking "that counsel had a right to make reasonable deductions from the evidence." He instructed counsel, however, to stay within the record.

By not instructing the jury to disregard the words of counsel, which were improperly used, and saying that the State's representative had a right to make reasonable deductions from the evidence it is easy to understand how the jury might have inferred that the Court thought the evidence justified the deduction; that it was a reasonable inference from the evidence that some American home concerned in the case had been invaded and that it was a matter for consideration in determining the measure of the defendant's guilt.

Such references and uses of inflammatory language in the prosecution of persons charged with crime are most unfortunate. If there had existed in the case any evidence to support the imputation against either deceased or defendant it may have been equally efficacious to support the cause of the State or the defense, accordingly as it supplied a motive for the unlawful attack by the defendant or the deceased. But beyond that it neither added to nor detracted from the crime committed on the one hand, if one was committed; nor justified the assault by the doctor, if he made an assault upon the defendant.

We do not hold this incident to constitute reversible error. The point cannot be said to have been sufficiently presented to make the error apparent, but as the case must be sent back for another trial we have commented upon the point in the hope that such dangerous ground in another trial of the case may be avoided.

The remaining assignments of error present no meritorious questions so far as we have examined them. In any case, the points are not likely to arise again upon another trial of the defendant which will be upon the charge of manslaughter, the offense of which he was found guilty.

For the reason stated in the foregoing opinion the judgment is reversed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.