# Staunton

## Ewell Grant Tasker v. Commonwealth of Virginia.

September 8, 1961.

Record No. 5270.

Present, All the Justices.

The opinion states the case.

*T. W. Messick; Harvey S. Lutins* (*Morton Honeyman*, on brief), for the plaintiff in error.

*M. Harris Parker, Assistant Attorney General* (*A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

CARRICO, J., delivered the opinion of the court.

This is a companion case to *Snyder* v. *Commonwealth,* Record No. 5243, this day decided.

Ewell Grant Tasker, herein referred to as the defendant, was charged in a joint indictment returned against the defendant, John F. Snyder, Jr., and E. W. Brizendine, with the grand larceny of a diamond ring, the property of Edward E. Foster. The defendant was tried separately and on July 14, 1960, a jury found him guilty of the charge and fixed his punishment at two years in the penitentiary. He was sentenced accordingly.

The defendant sought, and was granted, a writ of error, which calls for determination of the following questions:

1. Whether the trial court erred in refusing to require the Commonwealth to furnish the defendant a bill of particulars.

2. Whether the trial court erred in denying the defendant the right to cross-examine June Fuller Perrow for the purpose of discrediting her testimony.

3. Whether the evidence was sufficient to sustain the conviction of the defendant.

4. Whether the trial court erred in its rulings in granting and refusing instructions.

The evidence presented to the jury in the instant case varies in some respects from the evidence presented in the *Snyder* case (Record No. 5243) and will therefore have to be here set out.

Edward E. Foster, the complaining witness, was the owner and sole operator of a small jewelry store on Williamson Road, in the city of Roanoke.

On February 26, 1960, the defendant and Snyder went to Foster's store, at approximately two-thirty o'clock, P. M. Snyder had visited the store three to five weeks prior to that date.

Upon entering the store, the defendant and Snyder informed Foster that they were interested in a watch. Foster showed them two watches, which they examined and discussed.

While the defendant and Snyder were examining the watches, Brizendine entered the store. Foster spoke to him and said "I'll be with you in a minute." Snyder then said to Foster, "Go ahead and wait on him, we're in no hurry."

Foster then turned to Brizendine and inquired if he could wait on him. Brizendine stood in front of the diamond ring showcase, three or four feet away from the defendant and Snyder, and said he was interested in a set of rings for his wife. Foster removed a tray of rings from the showcase to display to Brizendine. The tray contained twelve slots to hold the rings in place, and before displaying the tray to Brizendine, Foster checked and found that each slot was occupied by a ring.

One of the rings in this tray was the one later alleged to have been stolen. It was described as having a solitaire diamond setting, containing 97 points, considered one carat, in a white gold, lady's Columbia true fit mounting, a distinctive patented device designed to prevent the ring from turning on the finger of the wearer. Foster was the only jewelry merchant in the city of Roanoke handling such a mounting. The ring was the largest Foster had; he had paid $525.00 for it, and it bore a tag showing its sale price to be $1,500.00.

Brizendine examined a number of rings from this tray and from another tray displayed later by Foster.

While Brizendine was examining the rings, Snyder asked Foster a question about the price of one of the watches that the defendant and Snyder were examining. Foster turned around and answered Snyder, who then said that he was just looking and that he would be back later. The defendant and Snyder thereupon left the store.

Foster then returned his attention to Brizendine, who said that he had selected a set of rings, which he handed to Foster. Brizendine told

Foster that he wanted to talk to his wife and that he would be back in a couple of hours. He then left the store, within one to three minutes of the time that the defendant and Snyder had left.

Foster immediately discovered that the Columbia-mounted diamond ring was missing. He notified the police department of his loss, and furnished the police a description of Brizendine and of the missing ring.

Brizendine, shortly after leaving Foster's store, appeared at the shop of Joel Krisch, a pawn broker who had dealt in precious stones for fifteen years and who was well acquainted with Brizendine. Brizendine exhibited to Krisch a one carat diamond ring, in a Columbia true fit mounting, and asked Krisch what he would give for the ring. Krisch told Brizendine the ring was worth $300.00, whereupon Brizendine became insulted and left the shop. In a short time, Krisch received a telephone call from the police concerning the ring stolen from Foster, and Krisch told the police that Brizendine had been in his shop with the ring.

Later in the afternoon of February 26, the defendant, Snyder and Brizendine went to the home of June Fuller Perrow, in the city of Roanoke, in Snyder's automobile. June Perrow had known Brizendine for five and one-half years, Snyder for a few years, and the defendant for seven or eight years.

June Perrow entered the automobile and rode with the three men. In the conversation during the ride, Brizendine told June Perrow that he had tried to sell a ring to Joel Krisch for $300.00, to which the defendant said, "I know where I can sell it for $600.00." The defendant pulled a ring out of his vest pocket and showed it to June Perrow. She described it as "a large white lady's diamond and it looked like something was on the back, a spring or something." The defendant returned the ring to his pocket. He told June Perrow the ring had come from Mr. Foster's.

Brizendine and June Perrow left the automobile at a diner. The defendant and Snyder departed, saying they were going to sell the ring for $600.00. They were gone for approximately one-half hour, and when they returned the defendant told Brizendine and June Perrow that, "the man didn't have the money but would give it to him Saturday morning."

The defendant did not testify and did not present any evidence, except testimony tending to discredit June Perrow.

The missing ring has never been recovered. Brizendine was convicted of the theft of the ring, and is now serving a sentence in the

penitentiary. Snyder, like the defendant, was convicted as an aider and abettor in the theft.

The defendant first contends that the trial court erred in refusing to require the Commonwealth to furnish him a bill of particulars.

The indictment upon which the defendant was tried was returned by the grand jury on June 6, 1960. The trial of the defendant took place on July 14, 1960, more than five weeks after the indictment.

On the morning of the trial, after the jury had been chosen and sworn, and after the witnesses had been sworn, the defendant's counsel asked the trial judge to retire to chambers. There for the first time, the court was asked to require the Commonwealth to furnish a bill of particulars stating whether the defendant was to be tried as a principal in the first degree or as a principal in the second degree. The trial judge refused this request, pointing out that it should have been made before the jury was sworn.

Two sound reasons support the ruling of the trial court in refusing the request for a bill of particulars.

First, as was said in the case of *Livingston* v. *Commonwealth*, 184 Va. 830, 837, 36 S. E. 2d, 561, 565, "The function of the bill of particulars is to supply additional information concerning an accusation. The decisive consideration in each case is whether the matter claimed to be left out of the indictment has resulted in depriving an accused of a substantial right and subjects him to the danger of being tried upon a charge for which he has not been indicted."

Under Code § 18.1-11, principals in the second degree may be indicted, tried, convicted and punished in all respects as if a principal in the first degree.

The indictment against the defendant charged that he "unlawfully and feloniously did steal, take and carry away" the ring belonging to Foster. The jury found him "guilty as charged in the indictment."

Thus, the charge against the defendant, either as a principal in the first degree or as a principal in the second degree, was fully and completely set forth in the indictment and he was found guilty of that charge and none other. There was no matter "claimed to be left out," the defendant was not deprived of a substantial right, and he could not have been subjected to "the danger of being tried upon a charge for which he had not been indicted." The defendant concedes that the indictment was in proper form. He was not entitled to any more specific information concerning the crime with which he was charged. *Livingston* v. *Commonwealth, supra.*

■ Second, we have previously held that a bill of particulars should be allowed in a criminal case, if the indictment does not fully charge the offense, to enable a defendant to prepare his defense properly. *Pine* v. *Commonwealth*, 121 Va. 812, 836, 93 S. E. 652, 659.

It cannot be said that a defendant needs additional information to prepare his defense where, as in the case before us, he waits until after the jury is sworn for his trial to make his motion for such information. His request then comes too late.

■ Defendant's next contention relates to the refusal of the trial court to permit defense counsel to cross-examine June Fuller Perrow, a Commonwealth witness, as to whether or not she had ever been convicted of the offense of contributing to the delinquency of a minor.

We have long recognized the right of a party to cross-examine a witness concerning the latter's prior conviction of a misdemeanor involving moral turpitude as a means to impeach the testimony of such witness. *Bell* v. *Commonwealth*, 167 Va. 526, 538, 539, 189 S. E. 441, 447.

The right of such cross-examination, however, has been narrowly limited, and if it is not clearly shown that the prior conviction was for an offense involving moral turpitude, the inquiry should not be permitted. *Burford* v. *Commonwealth*, 179 Va. 752, 765, 20 S. E. 2d 509, 514.

Justice Eggleston, now Chief Justice Eggleston, in an able and well reasoned opinion in *Parr* v. *Commonwealth*, 198 Va. 721, 724, 96 S. E. 2d 160, 163, approved the definition of a crime which involves moral turpitude as "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man."

We have previously held that petit larceny and the making of a false statement are crimes which involve moral turpitude. *Bell* v. *Commonwealth*, *supra*; *Chesapeake and Ohio Ry. Co.* v. *Hanes, Admr.*, 196 Va. 806, 813, 86 S. E. 2d 122, 126. We have not had occasion to pass upon the question of whether the misdemeanor of contributing to the delinquency of a minor is one so classified.

The code section setting forth the offense, § 18.1-14, is very broad.*

---

* § 18.1-14. Causing or encouraging children under eighteen years of age to commit misdemeanors, etc.—Any person eighteen years of age or older, including the parent of any child, who shall cause or encourage any child under the age of eighteen years to commit any misdemeanor, or who shall send or cause any such child to go into any place for an unlawful purpose, or who shall in any way subject any such

It is plain that certain acts which could form a basis for a conviction thereunder would involve moral turpitude. It is equally plain, however, that in many instances a conviction could result from a violation of the section that would not involve moral turpitude in any way. It would be manifestly unjust, if the prior conviction of a witness fell within this latter category, to permit his impeachment therefor in some subsequent and unrelated proceeding.

We therefore hold that conviction under Code, § 18.1-14, does not, as a matter of law, involve moral turpitude, so as to permit cross-examination thereof for impeachment purposes. Unless the record of conviction plainly shows that the specific act constituting the ground for the conviction is one involving moral turpitude according to the test laid down in *Parr* v. *Commonwealth, supra,* the fact of such conviction cannot be shown.

In the case before us, when the issue arose in the trial court, counsel for the defendant told the trial judge that the witness had not been convicted of an offense involving moral turpitude. It was, therefore, proper for the trial judge to refuse to require the witness to answer.

■ The defendant's third contention is that the evidence was not sufficient to support his conviction.

As has been said, under Code § 18.1-11, in the case of felony, every principal in the second degree may be indicted, tried, convicted and punished in all respects as if a principal in the first degree.

"A principal in the second degree is one not the perpetrator, but present, aiding and abetting the act done, or keeping watch or guard at some convenient distance." *Brown* v. *Commonwealth,* 130 Va. 733, 736, 107 S. E. 809, 810.

We recognize the principle, repeatedly set forth in our decisions, that the mere presence of a party when a crime is committed is not sufficient to render one guilty as an aider and abettor. *Smith* v. *Commonwealth,* 185 Va. 800, 819, 40 S. E. 2d 273, 282; *Harold* v. *Commonwealth,* 147 Va. 617, 623, 136 S. E. 658, 660.

We have, however, in many cases reaffirmed the proposition that if a person is present at the commission of a crime, inciting, encouraging, advising or assisting in the act done, he is deemed to be an aider and

---

child to vicious or immoral influences, or who shall induce, cause, encourage or contribute toward the dependency, neglect or delinquency of any such child, shall be guilty of a misdemeanor; but when the offense consists of having or attempting to have intercourse with any female child under the age of eighteen years, the fact that such female was not of previous chaste character or had been married may be shown in mitigation. This section shall not be construed as repealing, modifying or in any way affecting §§ 18.1-11, 18.1-41, 18.1-44, 18.1-45 and 18.1-196.

abettor, and is liable as principal. *Horton* v. *Commonwealth*, 99 Va. 848, 863, 864, 38 S. E. 184, 185; *Brown* v. *Commonwealth*, *supra*, 130 Va. at pp. 736, 737; *Rasnake* v. *Commonwealth*, 135 Va. 677, 707, 708, 115 S. E. 543, 553; *Spradlin* v. *Commonwealth*, 195 Va. 523, 527, 528, 79 S. E. 2d 443, 445.

In the case before us, where the defendant has been convicted by a jury whose verdict has been approved by the trial judge, and where the defendant assails the sufficiency of the evidence, under familiar rules it is our duty to look to that evidence which tends to support the verdict and to permit the verdict to stand unless plainly wrong. If there is evidence to sustain the verdict, this court should not overrule it and substitute its own judgment, even if its opinion might differ from that of the jury. Code § 8-491; *Hall* v. *Commonwealth*, 179 Va. 652, 658, 20 S. E. 2d 527, 529; *Ingram* v. *Commonwealth*, 192 Va. 794, 803, 66 S. E. 2d 846, 851.

Under the evidence, the jury could reasonably and properly have inferred and concluded that the defendant, Snyder and Brizendine were acquainted with each other prior to the visit to Foster's store and acted in concert in the planning and execution of the crime; that Snyder's visit to the store, two to three weeks prior to the theft, was for the purpose of surveying the situation for the later theft; that the presence of the defendant and Snyder in the store was for the purpose of diverting Foster's attention while Brizendine stole the ring and that the ring was in fact stolen when Foster's attention was so diverted; that the defendant and Snyder were present to serve as lookouts and to aid Brizendine to escape in the event he was detected stealing the ring; that the three men met after the crime to divide the spoils therefrom, or to devise means of disposing of the stolen article.

Under the set of facts and circumstances presented in evidence, the jury was warranted in finding that the defendant was present inciting, encouraging, advising and assisting the commission of the crime, and therefore an aider and abetter thereto.

We find the evidence sufficient to sustain the jury's verdict.

The defendant finally contends that the trial court erred in granting instruction 1, offered by the Commonwealth, and in refusing to grant instructions C, D, E and F, offered by the defendant.

Instruction 1 reads as follows:

"The Court instructs the jury that if you believe from the evidence in this case, beyond a reasonable doubt, that Ewell Grant Tasker was present aiding and abetting another in the unlawfully taking of one

diamond ring belonging to Edward E. Foster, and that the value of said diamond ring was more than Fifty Dollars, then you should find the defendant, Ewell Grant Tasker, guilty as charged in the indictment. . . ."

The defendant argues that this instruction is erroneous because it fails to distinguish between concert of action between the defendant and the actual thief and independent action on the part of the actual thief alone.

Instruction 1 must be read together with instruction 2, granted by the trial court, which told the jury that if it believed that the ring was stolen from Foster and that the defendant was present, but was not aiding and abetting in the theft, then he should be acquitted. When read together, these instructions set forth a proper statement of the law as applied to the evidence in the case and permitted the jury to convict the defendant only if it was proven that he was acting in concert with Brizendine, and on the other hand, directed the jury to acquit the defendant if the actions of the actual thief were independent of those of the defendant. Instruction 1 was properly granted.

■ Instruction C reads as follows:

"The court instructs the jury that in determining the credibility of any witness, and in determining the weight to be given the testimony of any witness, they may consider the good character or bad character of such witness and his general reputation in the community in which he resides, for truthfulness or untruthfulness."

This instruction was properly refused. The law is crystal clear in Virginia that it is improper to impeach a witness by evidence of his bad moral character, and the court should not make such evidence the subject of an instruction and permit the jury to consider it if it should be improvidently admitted. The credibility of none of the witnesses in this case was attacked in the proper manner, that is, by showing that their general reputation for truth and veracity was bad or that any of them had been convicted of a felony or a crime involving moral turpitude. *Harold* v. *Commonwealth, supra*, 147 Va., at page 622; *Fenner* v. *Commonwealth*, 152 Va. 1014, 1027, 1028, 148 S. E. 821, 825; *Clark* v. *Commonwealth*, 202 Va. 787, 789, 790, 120 S. E. 2d 270, 272, 273.

Instruction D was properly refused by the trial court, since it merely contained a re-statement of the principle set forth in instruction 2, granted by the court.

Instructions E and F were properly refused. The matters set forth therein were fully and amply covered by other instructions granted

by the trial court which, when read as a whole, gave to the defendant as favorable a position as he was entitled to have.

We find no error in connection with the conviction of the defendant, and the judgment of which he complains is, therefore,

*Affirmed.*