**Alexandria**

RONALD LEWIS CHRISMAN

v.

COMMONWEALTH OF VIRGINIA

No. 0396-85

Decided September 16, 1986

COUNSEL

E. Eugene Gunter for appellant.

Leah A. Darron, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.** — Ronald Lewis Chrisman (appellant) appeals from an order of the trial court which approved jury verdicts finding him guilty of two charges of exposing his genital parts to a child in violation of Code § 18.2-370(1); two charges of proposing that a child feel or fondle his genital parts in violation of Code § 18.2-370(3); two charges of proposing that a child submit to anal sodomy in violation of Code § 18.2-370(4); and two charges of aggravated sexual battery in violation of Code § 18.2-67.3. We granted this appeal on the single issue whether the trial court erred in ruling that appellant's prior conviction for indecent exposure was a conviction of a crime involving moral turpitude for the limited purpose of impeaching his credibility as a witness while testifying at trial in his own behalf.

On the narrow ground upon which this appeal was granted, sufficiency of the evidence to support guilt is not in issue. The facts relevant to the controverted issue are that while testifying on his own behalf appellant was asked whether previously he had been convicted of a crime involving moral turpitude; that the trial court required appellant to respond; and that, as a result, it was disclosed that on a prior occasion he had been convicted pursuant to a warrant which accused him of making an obscene display or exposure of his person, or private parts in a public place, or in any place where others are present in violation of Code § 18.2-387. This crime is commonly referred to as the offense of "indecent exposure."

There is a wide variation among the states as to the admissibility of prior convictions for the purpose of impeaching the credibility of a witness. Some states refuse to admit any evidence of prior convictions, *see State v. Camitsch*, 626 P.2d 1250 (Mont. 1981); *State v. Santiago*, 492 P.2d 657 (Hawaii 1971), while others allow use of any conviction without limitation. *See State v. Prather*, 290 So. 2d 840 (La. 1974); *Commonwealth v. West*, 258 N.E.2d 22 (Mass. 1970); *State v. Rush*, 436 P.2d 266 (Or. 1968). The long-standing rule in Virginia is founded on the common law and lies between the two extremes.

An examination of the derivation of the rule that permits the admissibility of prior convictions of certain crimes discloses criticism of the rule and the limitations thereon. The theory for its existence is that persons who would commit those crimes are probably unworthy of belief.

By the common law a person convicted of an infamous offence was incompetent afterwards to be a witness. These offences were treason, felony and all offences founded in fraud, and which come within the general notion of the *crimen falsi* of the Roman law.

\* \* \*

Mr. Bishop says, speaking of this incapacity of a witness because of conviction of an offence deemed infamous: "As a consequence of the final judgment for treason, or felony, or any misdemeanor of the sort known by the term *crimen falsi*, whereof all are commonly called infamous crimes, we have

the doctrine that persons convicted of any of these are not permitted to testify, when objected to, as witnesses in our courts. They are supposed to be so regardless of truth that it would be unjust to compel litigants to suffer from what they assert even under oath. Some embarrassment attends the attempt to particularize the crimes which are infamous within this rule."

*Barbour v. Commonwealth*, 80 Va. 287, 288-89 (1885); *see also Taylor v. Beck*, 24 Va. (3 Rand.) 316 (1825). Wigmore traced the rule back to the 1600s. *See* 1 Wigmore, *Evidence* 933 (2d ed. 1923). Initially, persons convicted of such crimes were held to be totally incompetent to testify as witnesses in any capacity. Subsequently, the rule was modified by statute and convicts were permitted to testify; however, it could then be shown that they previously had been convicted of crimes which at common law made them incompetent witnesses.

Dean Dudley W. Woodbridge reviewed the Virginia statutory modifications of the common law rule beginning with the first enactment in 1748 through changes made in 1777, 1792, 1849 and 1919.[1] *See also Bell v. Commonwealth*, 167 Va. 526, 532, 189 S.E. 441, 444 (1937).

Dean Woodbridge noted that the initial statutes provided that certain persons were deemed unworthy of belief and, therefore, were barred from giving evidence in any cause, criminal or civil. *See* 5 Henings Statutes at Large 546-47. He further reported that later statutes limited disqualifications to persons convicted of perjury, treason, murder or other felony, unless they had been pardoned or had served the prescribed punishment; still later, perjury was removed from the pardoned or time served alleviation. Acts of Assembly 1847-48, p. 124; *see also Patterson v. Commonwealth*, 139 Va. 589, 123 S.E. 657 (1924).

Felons could not, as a rule, testify unless pardoned or punished, and a person convicted of perjury could not testify although pardoned or punished.

---

[1] 23 Va. L. Rev. 470-80 (1937). Dudley W. Woodbridge, formerly dean of the Marshall-Wythe School of Law, College of William and Mary.

*Epes' Administrator v. Hardaway*, 135 Va. 80, 87, 115 S.E. 712, 715 (1923).

The modern statutory rule was enacted by the General Assembly of Virginia in 1919:

Conviction of felony or perjury shall not render the convict incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit.

Code of 1919, § 4779.

That section remains basically the same today.

A person convicted of a felony or perjury shall not be incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit.

Code § 19.2-269.

It was not necessary for the General Assembly to statutorily state that those convicted of misdemeanors would not be incompetent as witnesses because the common law did not disqualify misdemeanants. *See Burford v. Commonwealth*, 179 Va. 752, 764, 20 S.E.2d 509, 514 (1942).

There is no statutory provision which permits an advocate to inquire as to whether the witness previously has been convicted of a misdemeanor involving moral turpitude. The phrase "involving moral turpitude" was developed in the common law and applied only to crimes deemed "infamous."

At common law, persons convicted in courts of record of crimes which render them infamous are excluded from being witnesses. 'Infamous' crime in this sense is regarded as comprehending, treason, felony, and *crimen falsi*.

*Bell v. Commonwealth*, 167 Va. at 530, 189 S.E. at 443 (quoting 1 Wharton's Criminal Evidence 30). Justice Holt, in *Bell*, discloses the relationship between an "infamous crime" and one which "involves moral turpitude:"

An 'infamous' crime is one which works infamy in the person who commits it. At common law it was one which *involved*

*moral turpitude* and which rendered the party convicted thereof incompetent as a witness.

*Id.* at 531, 189 S.E. at 443 (emphasis added). Thus, it was only those crimes deemed "infamous" that also would be considered to involve moral turpitude, and only those crimes cast doubt on the veracity of the convict.

■ In Virginia, the phrase "involving moral turpitude" as applied to prior convictions of misdemeanors appears to have grown from the seeds sown in *Bell*. Justice Holt there made an exhaustive examination of the common law, subsequent English and Virginia statutes, and previously decided Virginia cases, relating to impeachment of witnesses by inquiring as to prior convictions. To show the seriousness of the common law conception of the word misdemeanors, Justice Holt said:

When Hastings stood before the House of Lords, charged with high crimes and misdemeanors, certainly that tribunal did not for seven years mill over inconsiderable offenses.

*Id.* at 530, 189 S.E. at 443. As applied to character for veracity, Justice Holt demonstrated the relationship between the concept of moral turpitude and the concept of infamous crime. And so have others.

[A]s all treasons and almost all felonies were punishable with death, it was very natural that crimes deemed to be of so grave a character as to render the offender unworthy to live should be considered as rendering him unworthy of belief in a court of justice.

Whether or not an offense is infamous, it seems, is to be determined by the character of the crime and not by its punishment.

*Davidson v. Watts*, 111 Va. 394, 397, 69 S.E. 328, 329 (1910).

Justice Holt agreed that it was not the *punishment* which makes a crime infamous, but rather the *nature* of the crime. *Bell v. Commonwealth*, 167 Va. at 530, 189 S.E. at 443.

Now, however, by statute in Virginia, Code, section 4758, the grade of the offense is fixed by the punishment. *Those*

*offenses punishable by death or confinement in the penitentiary are felonies and other offenses are misdemeanors, but no statute could affect their inherent nature, and so larceny, either grand or petit, is shot through with moral turpitude,* and this outstanding characteristic is not changed whether the thief steals forty-nine or fifty-one dollars. Indeed by statute now, Code, section 4785, one three times convicted of petit larceny must be sentenced to the penitentiary. Of course repetition of an offense does not change its nature.

At common law simple larceny of goods above the value of twelve pence is called grand larceny; of that value or under it is petit larceny. Both were felonies. Bouvier's Law Dictionary, "Felony;" *People ex rel. Cosgriff v. Craig,* 195 N. Y. 190, 88 N.E. 38; 36 C.J., page 800.

If it be conceded that petit larceny at common law was a misdemeanor, we reach the same results. *"An 'infamous' crime is one which works infamy in the person who commits it. At common law it was one which involved moral turpitude* and which rendered the party convicted thereof incompetent as a witness." 16 C.J., page 60.

At common law, there was no distinction between grand and petit larceny except in the punishment, which was death in the one case and whipping in the other . . . . 4 George 1, chapter 11, 4th Blackstone, pages 229, 238. One convicted of either offense was an incompetent witness and this continued to be the law until 31st George III, chapter 35, which made misdemeanant convicts competent.

*Id.* at 531, 189 S.E. at 443-44 (emphasis added). The foregoing analysis was followed by an extensive review of the Virginia statutes relating to the competency of witnesses and inquiries permitted. *Id.* at 532-33, 189 S.E. at 444. The English statutes changed the common law and made convicts competent witnesses but permitted the use of "all kinds of crimes by way of impeachment." *Id.* at 534, 189 S.E. at 445. Where the common law declared witnesses to be incompetent to testify only if convicted of treason, felony or misdemeanors classified *crimen falsi,* the English statute declared the convicts competent to testify but permitted a witness to be asked whether he had been convicted of *any* felony or misdemeanor.

The *Bell* Court reviewed the Virginia statutes which made witnesses competent and concluded: "There was no statute in Virginia which governs this practice and so on principle we are thrown back to common law and to the general rules of evidence. And this is true both as to felonies and as to misdemeanors." *Id.* at 534-35, 189 S.E. at 445.

The Court next reviewed a series of previously decided Virginia cases from *Uhl's Case,*[2] *Langhorne,*[3] *Barbour,*[4] *Cutchin,*[5] *Allen,*[6] *Harold,*[7] *Fenner,*[8] to *Smith.*[9]

In *Smith v. Commonwealth*, 155 Va. 1111, 156 S.E. 577, we said it was not proper to show by a witness himself that he had been convicted of an ordinary misdemeanor. It was not our purpose to thereby in any manner indicate that he could not be asked if he had been convicted of a misdemeanor involving moral turpitude. It follows that the character of the misdemeanor must be weighed by the trial judge, when the inadmissibility of such evidence is challenged.

*At common law simple larceny of whatever degree has been held to be a felony and those rules of evidence which dealt with competency and impeachment applied alike to all cases until modified by express acts of Parliament.* We have held, independent of statute, that conviction for an infamous crime might be shown by way of impeachment. The reason for such rule lies in the *nature* of the crime itself and not in the quantum of punishment suffered. The Legislature has the power to abolish capital punishment and to do away with its penitentiary. It has the power to declare that, so far as the laws of this State are concerned, all crimes thereafter committed shall be misdemeanors only, but plainly, *in the absence of some other statute, this would not thereafter prevent the impeachment of a witness who had been convicted of a crime involving moral turpitude. As a matter of fact the Legisla-*

---

[2]  *Uhl's Case*, 47 Va. (6 Gratt.) 706 (1849).
[3]  *Langhorne v. Commonwealth*, 76 Va. 1012 (1882).
[4]  *Barbour v. Commonwealth*, 80 Va. 287 (1885).
[5]  *Cutchin v. Roanoke*, 113 Va. 452, 74 S.E. 403 (1912).
[6]  *Allen v. Commonwealth*, 122 Va. 834, 94 S.E. 783 (1918).
[7]  *Harold v. Commonwealth*, 147 Va. 617, 136 S.E. 658 (1927).
[8]  *Fenner v. Commonwealth*, 152 Va. 1014, 148 S.E. 821 (1929).
[9]  *Smith v. Commonwealth*, 155 Va. 1111, 156 S.E. 577 (1931).

*ture has nowhere undertaken to deal with the moral status of such an offender.* Indeed it could not, though it could change the legal effect of such delinquencies. So far as punishments and disabilities are concerned a distinction has been made. Punishments vary and statutory disabilities are imposed upon felons which misdemeanants do not have to bear, but the law of evidence has been left untouched, save only in this, felons who were incompetent witnesses are now competent, subject to conditions directly imposed.

*Id.* at 537-38, 189 S.E. at 446-47 (emphasis added).

█ At common law, crimes of the kind that were designated *crimen falsi* included the crimes forgery, perjury, subornation of perjury and other crimes affecting the administration of justice, and in modern law they are said to be of a class of offenses such as involve deceit or falsification. *See* Black's Law Dictionary 481 (3rd ed. 1933).

Whatever may be the rule elsewhere, it is well settled in this state that the character of a witness for veracity cannot be impeached by proof of a prior conviction of crime, unless the crime be one which involved the character of the witness for veracity. *Harold v. Commonwealth,* 147 Va. 617, 622, 136 S.E. 658, 660 (1927); *see also McLane v. Commonwealth,* 202 Va. 197, 203, 116 S.E.2d 274, 279-80 (1960); *Zirkle v. Commonwealth,* 189 Va. 862, 873-74, 55 S.E.2d 24, 31 (1949). If the crime be a misdemeanor the right to inquire is limited to those that involve moral turpitude. *Hackman v. Commonwealth,* 220 Va. 710, 714, 261 S.E.2d 555, 559 (1980). It must be clearly shown that the prior conviction was for an offense involving moral turpitude; otherwise the inquiry should not be permitted. *Tasker v. Commonwealth,* 202 Va. 1019, 1024, 121 S.E.2d 459, 463-64 (1961). Since *Rex v. Jones,* 25 Eng. C.L.R. 453, quoted with approval in *Rand v. Commonwealth,* 50 Va. (9 Gratt.) 738, 752-53 (1852), we have been warned of the unfairness of disclosing prior convictions at the guilt phase of a defendant's trial on criminal charges. In *Rex,* it was stated "[t]hat if the jury were aware of the previous conviction it was (to use a common expression) like trying a man with a rope about his neck." Thus, care should be exercised in admitting evidence of any conviction of crimes because the jury might give too much weight to such evidence in determining the

guilt or innocence of the accused. *Zirkle*, 189 Va. at 873, 55 S.E.2d at 31.

It has been argued that the convict can always explain how he came to be convicted of indecent exposure. That right is narrowly limited.

> Another error alleged by the accused is the refusal of the trial court to permit him to state "the whole circumstances of his prior conviction."
>
> We said in *Smith v. Commonwealth*, 161 Va. 1112, 172 S.E. 286, that the only purpose of admitting "evidence of a former conviction is to discredit a witness in the case then being tried. To remove that stain or to weaken its weight, the accused has a right to show the nature of the charge, the mere fact, if it was a fact, that he was convicted on conflicting evidence and that he had served his time, or had been paroled or pardoned by the Governor."
>
> If the accused had been permitted to prove the circumstances of his former conviction, the result would have been a rehearing of the evidence for the defense which he had produced, or had an opportunity to produce, at the former trial.

*Coffey v. Commonwealth*, 188 Va. 629, 640, 51 S.E.2d 215, 220 (1949). The evidence not being in conflict, Lady Godiva could not explain her noble cause for being fully exposed as she rode naked on her horse over the Coventry streets. Nor could the college student explain his purpose of seeking admission to a fraternity while being initiated by riding unclothed in an open convertible through a busy intersection of his college town. Both would have been guilty of indecent exposure but should they be branded forever as probably unworthy of belief?

Some of the acts for which one might be convicted of indecent exposure would involve the character of the witness for veracity, while others would not. In *Tasker v. Commonwealth*, 202 Va. 1019, 121 S.E.2d 459 (1961), the Court was confronted with a similar question. There the issue was whether the misdemeanor of contributing to the delinquency of a minor[10] was a crime involving moral turpitude.

---

[10]    Code § 18.1-14 (repealed).

It is plain that certain acts which could form a basis for a conviction thereunder would involve moral turpitude. It is equally plain, however, that in many instances a conviction could result from a violation of the section that would not involve moral turpitude in any way. It would be manifestly unjust, if the prior conviction of a witness fell within this latter category, to permit his impeachment therefor in some subsequent and unrelated proceeding.

We therefore hold that conviction under Code § 18.1-14, does not, as a matter of law, involve moral turpitude, so as to permit cross-examination thereof for impeachment purposes.

*Id.* at 1025, 121 S.E.2d at 463.

An examination of the cases reviewed by the Supreme Court of Virginia discloses that the only misdemeanors which that Court has permitted the prosecution to use to impeach are making a false statement[11] and petit larceny.[12] These decisions are consistent with the common law. The Court has refused to approve the use of convictions for drunkenness and illegal possession of liquor, gambling, transporting untaxed liquor, driving under the influence, and purchasing liquor for a juvenile. *See Hackman v. Commonwealth*, 220 Va. at 714-15, 261 S.E.2d at 559; *see also Tasker v. Commonwealth*, 202 Va. 1019, 121 S.E.2d 459 (1961).

Former Chief Justice Eggelston quoted with approval a general definition of "moral turpitude" as "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Parr v. Commonwealth*, 198 Va. 721, 724, 96 S.E.2d 160, 163 (1957). That definition, taken in the abstract, may describe certain acts of indecent exposure; however, to fall within that general definition of moral turpitude the crime of indecent exposure must be "per se immoral and inherently evil." *Id.* at 724, 96 S.E.2d at 163. We deal not in the abstract but specifically with the question whether the crime involves the character of the witness for veracity.

We have been cited to *Brun v. Lazzell*, 172 Md. 314, 191 A. 240 (1937), which held that indecent exposure involved moral tur-

---

[11] *Chesapeake & Ohio Ry. Co. v. Hanes*, 196 Va. 806, 86 S.E.2d 122 (1955).
[12] *Bell v. Commonwealth*, 167 Va. 526, 189 S.E. 441 (1937).

pitude. That case dealt with a doctor's right to practice medicine and not his character for veracity.

In enacting Code § 19.2-269 which made convicted felons competent to testify while permitting their felonious convictions to be shown for the purpose of affecting the convicts' credit, the legislature is presumed to have known and to have had the common law in mind in the enactment of that section. *Wicks v. City of Charlottesville*, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974). When construing the Code and previously decided Virginia cases relevant thereto, we should construe them as near to the common law as possible. *Id.*; *see also Chichester v. Vass*, 5 Va. (1 Call.) 83, 102 (1797).

Applying those rules to the present case, we hold that the crime of indecent exposure is neither a crime of treason nor a felony, nor is it a crime of the sort known as *crimen falsi* at the Roman or common law. It does not involve deception, trickery, forgery, lying, cheating or stealing. It is not an infamous crime. It does not involve moral turpitude as that phrase has been applied at common law relating to incompetency or impeachment. It is not determinative of the character of a person for veracity. If the rule of the common law relative to the introduction of prior convictions for the purpose of impeaching the character of a witness is to be enlarged, it is the province of the General Assembly, not the courts. Only those prior convictions which clearly bear on the witness' character for veracity as prescribed by the common law, or which are expressly permitted by statute, should be received into evidence.

We hold that it was error to admit into evidence the fact of the defendant's prior conviction of indecent exposure. Since this Court has no way of determining the effect the admission of the prior conviction of indecent exposure had on the jury, we cannot say that the error was harmless.

Accordingly, the convictions appealed from in this appeal are reversed, the verdicts set aside, and the cases remanded to the trial court for new trials if the Commonwealth be so advised.

*Reversed and remanded.*

Coleman, J., and Keenan, J., concurred.