COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Coleman and Elder
Argued by teleconference


PAUL ED NEWTON
                                        OPINION BY
v.    Record No. 1695-97-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                         APRIL 6, 1999
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF LEE COUNTY
                      William C. Fugate, Judge

          Timothy W. McAfee for appellant.

          (Mark L. Earley, Attorney General; John H.
          McLees, Jr., Assistant Attorney General;
          Ruth Morken McKeaney, Assistant Attorney
          General, on brief), for appellee.


     Paul Ed Newton (appellant) was convicted in a jury trial of

two counts of distribution of cocaine in violation of Code

§ 18.2-248(C).  On appeal, appellant argues that the trial court

erred in:  (1) requiring him to divulge privileged information

to the Commonwealth; (2) allowing improper impeachment evidence

regarding one of appellant's witnesses; (3) permitting two

officers to give opinion testimony; (4) admitting into evidence

tape-recorded conversations between appellant and the informant;

(5) allowing the Commonwealth to introduce evidence of

appellant's prior criminal conduct; (6) allowing improper lay

opinion testimony about appellant's guilt; (7) incorrectly

instructing the jury as to the informant's immunity from

prosecution; and (8) making an improper comment to the jury foreperson during deliberations. For the reasons that follow, we affirm the convictions.

## I. BACKGROUND

Appellant was charged with selling cocaine to Terry Harber (Harber) on July 9 and July 15, 1996. The Commonwealth's case was based primarily upon the testimony of Harber, who was acting as an informant for Brian Shoemaker, a Lee County Deputy Sheriff assigned to a multi-jurisdiction "Drug Task Force." Harber made "controlled buys" of cocaine from appellant while wearing a body wire, which transmitted Harber's conversations to nearby police officers. These radio transmissions were recorded and played for the jury. At trial, appellant contended that Harber was an unreliable informant and that the alleged sales of cocaine had never occurred.

## II. PRIVILEGED INFORMATION

Prior to trial, appellant filed various motions for discovery and submitted proposed orders to the Commonwealth's Attorney for endorsement. Although the trial court did not enter a formal discovery order, it made several rulings during the discovery hearings. At no time prior to trial did the Commonwealth request reciprocal discovery pursuant to Rule 3A:11(c).

-

During a recess while voir dire of the jury panel was in progress, the Commonwealth's Attorney learned that appellant's counsel had interviewed Terry Harber. This pretrial interview (the Harber statement) was recorded, a transcript of the interview was prepared, and Harber signed an affidavit regarding his statements made in the interview.[1] The Commonwealth requested the trial court to order disclosure of these materials. Appellant argued that: (1) the Harber statement was not discoverable under Rule 3A:11; (2) the Commonwealth had no right to information developed by the defendant in anticipation of trial; and (3) he intended to use the materials only if necessary to impeach Harber's direct testimony.

---

[1]The parties dispute the occurrence of the events that led to Harber's interview.

The Commonwealth's Attorney alleged that appellant's counsel called Harber to ask about certain details of the controlled buys involving appellant. At some point after the telephone conversation, an individual named Dale Kempton contacted Harber and "applied some pressure on the informant to change his story and say he didn't remember." Thereafter, Kempton brought Harber to counsel's office where he was interviewed on tape, and Harber was asked to sign the affidavit. Although he was reluctant to do so, Harber eventually signed the document.

According to appellant's counsel, he called Harber to inquire about the controlled buys. Harber allegedly told counsel that appellant should plead guilty because "it'll save me from having to go to testify." Sometime thereafter, Harber appeared in counsel's office because he had some information that was "going to be of benefit to [appellant]." Counsel taped the conversation because he did not want to be a witness if the information later turned out to be useful. Harber left the office and later returned to review the tape. At that point, an affidavit was prepared and signed by Harber.

-

Over appellant's objection, the trial court ordered that copies of the tape, transcript, and affidavit be provided to the Commonwealth's Attorney. The trial judge ruled:

> I don't think there's anything wrong with you talking with the witness, but if the witness has made a statement to you, independent of what has been given to you and different from what he has testified to, or different from what he has advised the Commonwealth Attorney, I think that yes, I think the Commonwealth Attorney would be entitled to see what that is.

Appellant complied with the court's ruling while maintaining his objection. After the jury selection process concluded, the trial court granted the Commonwealth's motion to adjourn until the next morning so the Commonwealth could review the disclosed material.

On appeal, we decide whether Code § 19.2-268.1--which addresses impeachment of witnesses and allows "the court at any time <u>during the trial</u> to require the production" of "previous statements made by [a witness] in writing or reduced into writing"--provides authority for a trial court to order the disclosure of otherwise non-discoverable material. The parties agree that the Harber statement was not discoverable by the Commonwealth under the discovery provisions of Rule 3A:11.[2]

---

[2]The Commonwealth's right to discovery is governed by Rule 3A:11(c). That subsection provides that if the court grants discovery to the accused, then upon motion the Commonwealth is entitled to the following: (1) written reports of autopsy

-

However, the parties dispute the application of Code § 19.2-268.1.

The Commonwealth contends that while advance disclosure of the Harber statement was not mandated under Rule 3A:11, Code § 19.2-268.1 gave the trial court the discretion to require the production of the tape and affidavit for inspection. Under the circumstances of the instant case, we hold that the trial judge erred in requiring appellant to disclose the materials prior to their use or proposed use for impeachment purposes.

Code § 19.2-268.1 specifically addresses the contradiction of witnesses by use of prior inconsistent writings and provides:

> A witness in a criminal case may be cross-examined as to previous statements made by him in writing or reduced into writing, relative to the subject matter of the proceeding, without such writing being shown to him; but if it is intended to contradict such witness by the writing, his attention must, before such contradictory proof can be given, be called to the particular occasion on which the writing is supposed to have been made, and he may be

examinations, ballistic tests, fingerprint, blood, urine and breath analysis, and other scientific evidence that the accused intends to offer into evidence at trial; (2) a statement indicating whether the accused intends to introduce evidence of an alibi; and (3) if the accused intends to rely upon the defense of insanity or feeblemindedness, written reports of physical or mental examinations of the accused. There is no other provision for discovery by the Commonwealth in a criminal matter.

Here, counsel for appellant contemplated using the Harber statement during the cross-examination of the witness and this prior inconsistent writing is not covered by Rule 3A:11(c).

-

> asked if he did not make a writing of the purport of the one to be offered to contradict him, and if he denies making it, or does not admit its execution, it shall then be shown to him, and if he admits its genuineness, <u>he</u> shall be allowed to make his own explanation of it; but it shall be competent for the court at any time <u>during the trial</u> to require the production of the writing for its inspection, and the court may thereupon make such use of it for the purpose of the trial as it may think best.

(Emphasis added). The last provision of the statute grants the trial court broad latitude in ordering the production of a witness' statement when the statement is used for impeachment purposes. However, in the context of this case, the provision does not allow for pretrial discovery or pre-impeachment use.

Code § 19.2-268.1 was not intended by the legislature to be used as an alternate method of discovery. To the contrary, it was specifically placed in Chapter 16 of Title 19.2 entitled, <u>Evidence and Witnesses</u>. "While not part of the code section, in the strictest sense, the caption may be considered in construing the statute, as it is 'valuable and indicative of legislative intent.'" <u>Bell v. Commonwealth</u>, 21 Va. App. 693, 701, 467 S.E.2d 289, 293 (1996) (quoting <u>Krummert v. Commonwealth</u>, 186 Va. 581, 584, 43 S.E.2d 831, 832 (1947)). Furthermore, the code section is entitled, <u>Contradiction by prior inconsistent writing</u>, and in construing the statute, we shall look to its title. "A title may be read in an attempt to ascertain an act's

-

purpose, though it is no part of the act itself."  Hawkins v.

Commonwealth, 255 Va. 261, 269, 497 S.E.2d 839, 842 (1998).

Considering the chapter caption and title of the statute,

we conclude that the authority granted in Code § 19.2-268.1 was

not intended to supplement the discovery provisions of Rule

3A:11.  Rather, it was intended to be used as an evidentiary

rule by the trial court to order the production, inspection and

use of a written statement once a witness has been

cross-examined about the existence or contents of a prior

statement.  Indeed, we have consistently applied Code

§ 19.2-268.1 only to cases involving the impeachment of a

witness.  For example, in Smith v. Commonwealth, 19 Va. App.

594, 453 S.E.2d 572 (1995), we held that the trial court did not

abuse its discretion in admitting a written stipulation of facts

to impeach the trial testimony of Williams, the defendant's

primary witness.  Addressing the proper use of prior

inconsistent written statements, we wrote:

> We see no reason why the signed stipulation
> of facts that accompanied Williams's plea
> should be viewed as anything other than
> Williams's admission to the events that
> transpired during the consummated drug sale.
>      Importantly, the trial court is
> permitted to "make such use of [the writing]
> for the purpose of the trial as it may think
> best."  The record demonstrates that the
> stipulation of facts was submitted in
> compliance with Code § 19.2-268.1.  After
> the stipulation's submission, appellant's
> counsel had the opportunity to elicit

-

> Williams's version of the facts.
> Thereafter, it was within the province of
> the jury to determine Williams's veracity.

Id. at 597, 453 S.E.2d at 574 (citations omitted) (emphasis added).  Accordingly, we concluded in Smith that "the stipulation's introduction for impeachment purposes was not an abuse of discretion."  Id. at 598, 453 S.E.2d at 575.  See also Spruill v. Commonwealth, 221 Va. 475, 485, 271 S.E.2d 419, 425 (1980) (finding that the trial court did not abuse its discretion in denying defendant's request under Code § 19.2-268.1 to introduce a medical report where there was "nothing contradictory or inconsistent" in the proffered report).

In Edwards v. Commonwealth, 19 Va. App. 568, 454 S.E.2d 1 (1995), we again considered the application of Code § 19.2-268.1 where the defendant attempted to impeach the Commonwealth's witnesses by questioning them about prior statements made at a preliminary hearing.  The Commonwealth argued that the statute applied and the defendant was required to use a transcript when attempting to impeach the two witnesses.  See id. at 570, 454 S.E.2d at 2.  Although we held that Code § 19.2-268.1 did not apply in that case, our analysis was based upon evidentiary rules of impeachment.

> The court erred in requiring a
> transcript as the only means of impeaching a
> witness based on inconsistent statements

-

made at an earlier hearing.  Although laying a foundation prior to the introduction of impeachment evidence is a separate and necessary step in the impeachment process, it is not contingent on the existence of a transcript.  While using a transcript, if available, is the preferable means of laying an impeachment foundation, it is not the only means.  This rule also applies once the initial foundation has been laid.  If a witness denies or is unable to recall a prior statement, a party may impeach him by introducing other evidence, such as another witness who heard the inconsistent statement.  If a transcript is available, the court may require its production pursuant to the mandate of Code § 19.2-268.1 even if there are other means of impeachment.

Id. at 571-72, 454 S.E.2d at 2-3 (second emphasis added).  See also Smith v. Commonwealth, 15 Va. App. 507, 511, 425 S.E.2d 95, 98 (1992) ("If a witness gives testimony that is inconsistent with a prior statement, or testifies that he does not recall making the prior statement, a sufficient foundation for impeachment has been laid, and opposing counsel may cross-examine the witness as to the inconsistency.  In addition, all inconsistent portions of that prior written statement are admissible for impeachment purposes.").

The case law is well settled as to the proper use of written statements under Code § 19.2-268.1.  That provision applies only to the evidentiary rule of impeachment during trial and provides no authority to order a defendant to disclose a witness' written statement prior to trial.  In the instant case,

-

the trial court ordered appellant to disclose the tape, transcript and affidavit of Harber before opening statements, which allowed the Commonwealth an additional day to review the materials. This requirement was tantamount to ordering the defendant to provide discovery materials that under Rule 3A:11 would not have been discoverable.

Moreover, while the Commonwealth requested disclosure of the Harber statement pursuant to Code § 19.2-268.1, it appears from the record that the trial court based its decision solely on discovery rules. The trial judge stated:

> Well I've made certain rulings, here, that I have directed that the Commonwealth Attorney make available to defense counsel materials and so forth, and I don't think this trial is a one-way deal, I think we need to go down the middle of the road. For that reason I suppose [defense counsel] is allowed to listen to any and all tapes which the Commonwealth may have, which the Commonwealth is going to rely upon, and then at the last minute you, as defense counsel, have come up with something different. I don't think the Commonwealth Attorney should have to wait in anticipation as to whether it's going to be used or not used. I take it's going to be used and she should be entitled to see what it is.

Nevertheless, the Commonwealth argues that because appellant indicated that the Harber statement might be used for impeachment purposes during trial, the trial court properly exercised its authority under Code § 19.2-268.1 in requiring production of the written materials at an earlier time.

-

However, as the statute mandates, there is a proper method for impeachment by prior inconsistent writings. As we stated in Scott v. Commonwealth, 7 Va. App. 252, 372 S.E.2d 771 (1988), cert. denied, 490 U.S. 1095 (1989),

> Code § 19.2-268.1, in plain language, permits the cross-examination of a witness in a criminal case based on a prior written statement by the witness. This statute provides that if the witness denies making the prior statement, it shall then be shown to him and if he admits its genuineness, he shall be allowed to make his own explanation of it.

Id. at 258, 372 S.E.2d at 775.

In the instant case, the Commonwealth put the cart before the horse. Appellant indicated that, if necessary, he would use the interview materials to impeach Harber. However, when the Commonwealth's request was made during voir dire of the jury, appellant could only speculate as to the substance of Harber's direct testimony. Indeed, the trial judge recognized that the statement was useful for impeachment purposes only if the witness provided inconsistent testimony on direct examination.[3]

---

[3]The trial judge stated:

> I don't know what this particular witness is going to testify to, but I don't think anybody should be put in the position where they're unmindful, or have some idea of what the evidence is going to be. What he told you may be a correct statement of facts, what he has previously said or done, and you taped it, you've gotten it, and I

If, during the cross-examination of Harber, appellant attempted to impeach the witness, then Code § 19.2-268.1 would have allowed the trial court to "require the production of the writing for its inspection" and "thereupon make such use of it for the purpose of the trial as it may think best."  Code § 19.2-268.1; see also Edwards, 19 Va. App. at 571, 454 S.E.2d at 2 ("After the foundation is laid, '[t]he witness may then usually be impeached by the introduction of evidence to prove that the prior inconsistent statement was in fact made.'  Such evidence includes the testimony of another witness who heard the prior inconsistent statement, or the transcript of a prior hearing.  If the prior statement was 'in writing or reduced to writing,' such as in the form of a transcript, the court may require the party to produce the writing." (citations omitted) (emphasis added)).  Accordingly, we hold the trial court erred in ordering disclosure of the Harber statement prior to the proper foundation for its use and as a substitute for pretrial discovery.

However, our inquiry does not end there.  We must decide whether the error requires reversal.  Our determination of

---

think the Commonwealth is entitled to see
what it is, and that is my ruling on the
matter.

(Emphasis added).

-

whether the error is harmless is guided by familiar principles. Non-constitutional error "is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678) (emphasis added in Lavinder). To determine whether an error is harmless, the Court "must review the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." Id. at 1007, 407 S.E.2d at 912. "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Id. at 1005, 407 S.E.2d at 911.

Applying the standard articulated in Lavinder, we conclude that the error was harmless. While the trial court erroneously ordered disclosure of the Harber statement, it plainly appears from the evidence that appellant received "a fair trial on the merits and substantial justice has been reached." Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911. Moreover, we cannot unring the bell and restore the status quo. The statement has been disclosed to the Commonwealth and on retrial it would be available for their use.

-

Furthermore, the record affirmatively establishes that the verdict was not affected by the trial court's error. Although the Commonwealth was granted access to the Harber materials at the conclusion of voir dire, the course of trial proceeded as if the tape, transcript and affidavit had not been disclosed to the Commonwealth's Attorney. Indeed, the Commonwealth limited its direct examination of Harber to his prior criminal record, the grant of immunity for testifying and the circumstances involving the controlled buys from appellant. The Commonwealth also played for the jury the tape-recorded conversations between appellant and Harber. The record clearly establishes that the Harber materials were not used to bolster Harber's credibility on direct examination.

It was not until the cross-examination of Harber that the jury learned about the existence and contents of his tape-recorded interview. Counsel attempted to impeach Harber's trial testimony that identified appellant as the individual involved in the controlled buys. Only at that point did he use the pretrial statement Harber had given to defense counsel, in which Harber stated he could not remember who sold him the drugs. On redirect, Harber testified that the April 1998 statement was untrue and that he was "pressured" into making it.

In summary, we conclude that the trial court erred in ordering pretrial disclosure of the Harber statement because it

-

was not discoverable under Rule 3A:11 nor was it properly produced under Code § 19.2-268.1. However, we conclude that this error was harmless because this information would have ultimately been provided to the Commonwealth and its use would have been the same. The course of the trial did not change, and it plainly appears from the record that appellant received a fair trial. See Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911.

### III. IMPEACHMENT OF KEMPTON

Appellant called as a witness Dale Kempton, a longtime acquaintance of appellant and Harber. Appellant attempted to contradict Harber's testimony that he was "pressured" into making the statement at defense counsel's office and later into signing an affidavit memorializing it. During cross-examination of Kempton, the Commonwealth attempted to impeach him with evidence of prior drug use, a misdemeanor conviction for distribution of marijuana, and an assault and battery and malicious wounding charge, neither of which resulted in conviction. Over appellant's objection, the trial court allowed the testimony into evidence. Appellant contends on appeal that the Commonwealth's method of impeaching Dale Kempton was improper. We agree.

On cross-examination by the Commonwealth, Kempton was asked whether he had a history of drug abuse. The witness stated,

-

"No."  Over appellant's objection, the trial court allowed the Commonwealth to question whether Kempton had previously been convicted of misdemeanor distribution of marijuana.  We hold the trial court erred in allowing this line of questioning.

"Where the purpose of the inquiry is to impeach a witness' veracity, cross-examination concerning a witness' prior convictions is limited to prior felony convictions and convictions for misdemeanors involving moral turpitude."  Scott v. Commonwealth, 25 Va. App. 36, 41, 486 S.E.2d 120, 122 (1997) (emphasis added) (citing Johnson v. Commonwealth, 224 Va. 525, 528, 298 S.E.2d 99, 101 (1982); Chrisman v. Commonwealth, 3 Va. App. 89, 93-100, 348 S.E.2d 399, 401-05 (1986)).  Misdemeanor crimes of moral turpitude are limited to those crimes involving lying, cheating and stealing, including making a false statement and petit larceny.  See Chrisman, 3 Va. App. at 99, 348 S.E.2d at 404.  See also Charles E. Friend, The Law of Evidence in Virginia § 5-12(a) (4th ed. 1993).  However, the misdemeanor crime of distribution of marijuana is not considered a crime of moral turpitude and, therefore, is not an appropriate form of impeachment.[4]  Accordingly, the trial court erred in allowing

_____

[4]The Commonwealth mistakenly relies on Johnson, 224 Va. 525, 298 S.E.2d 99, for the proposition that the distribution of drugs is a crime of moral turpitude.  In Johnson, the Supreme Court wrote:

-

inquiry into whether Kempton had been convicted of misdemeanor distribution of marijuana.

The trial court also erred in allowing the Commonwealth's Attorney to question Kempton about unadjudicated offenses of assault and battery and malicious wounding.

> It is well settled in Virginia that a litigant's right to impeach the credibility of adverse witnesses by showing their participation in criminal conduct has been confined to questions about a <u>conviction</u> for a felony, perjury, and a misdemeanor involving moral turpitude. This limitation upon a defendant's impeachment rights is a reasonably necessary measure to restrict the scope of a criminal trial. . . . <u>[A]dmission of unadjudicated crimes for purposes of</u>

---

> [Defendant's] prior convictions involved grand larceny, statutory burglary, distribution of drugs, and possession of drugs with intent to distribute. <u>Not only were they crimes of moral turpitude</u>, but their nature was so similar to the crime about which he testified that the jury might have concluded, if the offenses had been named, that he was especially susceptible to the hope of favor if he cooperated or to the fear of severe punishment as an habitual criminal if he did not.

<u>Id.</u> at 529, 298 S.E.2d at 101-02 (emphasis added).

While the Court indicated that the enumerated felonies may involve moral turpitude, it is clear from the language of <u>Johnson</u> that it was pure dictum. The Court was not formally addressing whether the crime of misdemeanor distribution of drugs is a crime of moral turpitude, <u>i.e.</u>, one involving lying, cheating or stealing, but rather was discussing prior felonies of the defendant in that case. Thus, <u>Johnson</u> does not provide authoritative support for the proposition argued by the Commonwealth.

-

>general impeachment of a witness would "lead
>to confusion in directing the jury's
>attention to collateral matters and away
>from the issues in the case."

Ramdass v. Commonwealth, 246 Va. 413, 423, 437 S.E.2d 566, 572 (1993) (emphasis added) (quoting Clark v. Commonwealth, 202 Va. 787, 790, 120 S.E.2d 270, 273 (1961)).

In the present case, the trial court erred by allowing the Commonwealth to question Kempton about the unadjudicated charges of assault and battery and malicious wounding.  Kempton had not been tried on these offenses and, absent a felony conviction on the charges, they were inadmissible for impeachment purposes. See Banks v. Commonwealth, 16 Va. App. 959, 963, 434 S.E.2d 681, 683 (1993) (holding that evidence of specific acts of misconduct is generally not admissible to impeach a witness' credibility).

Although we conclude that the Commonwealth's method of impeaching Kempton was improper, we hold that this error was also harmless.  While originally not limiting this line of questioning, the trial court later directed the jury "to disregard any statements [Kempton] made about the misdemeanor conviction."  The jury is presumed to have followed that curative instruction.  See LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), cert. denied, 464 U.S. 1063 (1984).  Moreover, based upon our review of the record, we cannot say as a matter of law that the evidence of Kempton's

-

unadjudicated offenses affected the verdict.  To the contrary,
the evidence established that appellant sold drugs to Harber on
July 9 and July 15, 1996.  Radio transmissions of these
"controlled buys" of cocaine were recorded and played for the
jury.  The Commonwealth presented sufficient evidence of
appellant's guilt apart from the questions Kempton was asked on
cross-examination.

IV.  TESTIMONY OF GIVENS AND STALLARD

Special Agent Robert Givens, one of the officers who
arranged and supervised Harber's controlled buys from appellant,
testified on direct examination about the methods of using
informants in drug cases.  Givens explained at length how a
"typical" informant is recruited and used in "controlled buys."
Over appellant's objection, Givens was allowed to testify that
informants are usually threatened or harassed by members of the
drug community and that informants typically buy from
individuals whom they have known and from whom they have
purchased in the past.

On cross-examination, appellant's counsel asked Givens
numerous questions regarding the typical informant, including
the following:  "Would you agree that a typical informant is
someone that can't be trusted?"  On redirect, Givens indicated
that he had worked with a much worse confidential informant than
Harber and had been satisfied with that informant's results.

Richard Stallard of the Big Stone Gap Police Department was also involved in the investigation of appellant. Stallard, working in an undercover capacity, drove Harber to the bar where Harber purchased cocaine from appellant. Over appellant's objection, Stallard testified that it is "typical" for cocaine purchases to be short on quantity.[5]

Appellant contends that the trial court erred in allowing into evidence the opinion testimony of Givens and Stallard, as the prejudice outweighed any probative value. Specifically, he argues that it was improper to allow the witnesses to testify about the "typical" informant and the "typical" drug purchase. Having solicited evidence of the same character on cross-examination, appellant is precluded from claiming that it was error for the Commonwealth to have introduced evidence of the same nature. See Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992). "The Rule is that 'where an accused unsuccessfully objects to evidence which he considers improper and then on his own behalf introduces evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error.'" Id. (quoting Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970)).

_____

[5]Officer Brian Shoemaker of the Lee County Sheriff's Department also testified that it is "typical" that the purchase weight is short.

-

This is precisely what occurred here.  Appellant attempted on cross-examination to expand what a "typical informant" might do and to discredit the "typical informant" by asking Givens about a person's "typical" misdeeds and the difficulties officers might encounter working with him or her.  Furthermore, appellant sought to impeach Harber by identifying him as "a typical informant."  We hold that appellant's line of questioning on cross-examination affirmatively waived any objection to the allegedly improper opinion testimony of the officers.  Cf. Robinson v. Commonwealth, 207 Va. 66, 68, 147 S.E.2d 730, 732 (1966) ("[T]he testimony was elicited . . . during cross-examination by the defendant and he, therefore, can have no ground for complaint.").

### V.  BODY-WIRE TRANSMISSIONS

Appellant next contends the trial court erred in admitting into evidence the tape-recorded conversations between appellant and Harber.  The evidence established that Officer Stallard installed a wire transmitter on Harber to monitor the controlled buy on July 9, 1996.  When Harber testified on direct examination and described his first drug transaction with appellant, the trial court allowed the Commonwealth to play the tape recording for the jury.

On appeal, appellant contends that the use of the body-wire transmitter violated the Federal Communications Act, 47 U.S.C.

-

§ 301, and various provisions of Chapter 6 of the Virginia Code,
entitled Interception of Wire, Electronic or Oral
Communications.  Accordingly, he argues, the tape-recorded
evidence should have been excluded.  We disagree.

Under the exclusionary rule, "evidence obtained in
violation of the Fourth Amendment cannot be used in a criminal
proceeding against the victim of the illegal search and
seizure."  United States v. Calandra, 414 U.S. 338, 347 (1974).
The rule's primary purpose is "to deter future unlawful police
conduct and thereby effectuate the guarantee of the Fourth
Amendment against unreasonable searches and seizures."  Id.  In
Virginia, the rule does not apply for mere statutory violations.
See Horne v. Commonwealth, 230 Va. 512, 518-19, 339 S.E.2d 186,
191 (1986); Webber v. Commonwealth, 26 Va. App. 549, 561, 496
S.E.2d 83, 88 (1998); Alatishe v. Commonwealth, 12 Va. App. 376,
379, 404 S.E.2d 81, 83 (1991).

> While violations of state procedural
> statutes are viewed with disfavor, . . .
> neither the Virginia Supreme Court nor the
> legislature has adopted an exclusionary rule
> for such violations [ ] . . . where no
> deprivation of the defendant's
> constitutional rights occurred.
> [H]istorically, searches or seizures made
> contrary to provisions contained in Virginia
> statutes provide no right of suppression
> unless the statute supplies that right.

Spivey v. Commonwealth, 23 Va. App. 715, 723-24, 479 S.E.2d 543,
547 (1997) (quotations omitted).

-

In the instant case, appellant does not allege that his constitutional rights were violated by the law enforcement agency's use of the body-wire transmitter. Even assuming that either a state or federal statutory violation occurred, which we do not decide, absent an express provision by the legislature that such evidence should be suppressed, the trial court did not err in admitting the tape-recorded conversations between appellant and Harber. See United States v. Oriakhi, 57 F.3d 1290, 1295 n.1 (4th Cir.), cert. denied, 516 U.S. 952 (1995) (noting that "it is not clear that the exclusionary rule would apply to a statutory violation if the searches were constitutionally permissible."); United States v. Jones, 13 F.3d 100, 103 (4th Cir. 1993) ("[W]e do not think in any event that the appropriate remedy for [the violation of the statute] in this case would be suppression of the evidence obtained or reversal of the conviction."); Lovelace v. Commonwealth, 27 Va. App. 575, 585, 500 S.E.2d 267, 272 (1998) (holding that "violation of the statute would not require suppression of evidence obtained in contravention of its terms, absent express provision to the contrary by the legislature").

VI. APPELLANT'S PRIOR CRIMINAL CONDUCT

We reject appellant's argument that the trial court erred in admitting evidence of appellant's prior drug-related activity. While proof of "other crimes" is inadmissible to show

-

a defendant's criminal disposition, such evidence is admissible "if it tends to prove any relevant element of the offense charged." Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998) (emphasis in original). "'Such evidence is permissive in cases where the motive, intent, or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial.'" Pavlick v. Commonwealth, 27 Va. App. 219, 226, 497 S.E.2d 920, 923 (1998) (en banc) (emphasis added) (quoting Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)). In addressing the admissibility of "other crimes" evidence, the court must also balance the probative value of the evidence of the other offenses and determine whether it exceeds the prejudice to the accused. See Guill, 255 Va. at 139, 495 S.E.2d at 491-92.

In the instant case, Harber testified that on July 9, 1996, the police gave him $165 for the first controlled buy to purchase a gram of cocaine from appellant for $140. When the parties met, appellant claimed Harber owed him $20 for a previous purchase. In describing the second controlled buy, Harber testified that four other individuals were present when appellant pulled out two bags of cocaine, cut the contents of them into four portions and sold one portion to Harber.

-

Harber's testimony that appellant insisted Harber owed money to appellant for a previous drug purchase and that other individuals were present at the second controlled buy to make drug purchases constituted evidence "connected with" the offenses for which appellant was tried.  As the Supreme Court stated in Scott v. Commonwealth, 228 Va. 519, 323 S.E.2d 572 (1984),

> [w]here a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence "sanitized" so as to deny the jury knowledge of all but the immediate crime for which he is on trial.  The fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as those which preceded it; even though they may show the defendant guilty of other offenses.

Id. at 526-27, 323 S.E.2d at 577 (citations omitted).  Thus, the probative value of the circumstances underlying the two controlled buys outweighed any incidental prejudice to appellant in the form of evidence that appellant may have been involved in other drug distributions.

## VII.  OPINION TESTIMONY

Appellant next argues that "the trial court improperly allowed Harber to testify that [appellant] should plead guilty." A review of the trial transcript indicates that during the direct examination of Harber, the Commonwealth made no reference

-

to Harber's opinion of appellant's guilt or innocence.  However,
on cross-examination, appellant's counsel asked Harber the
following question:  "Is it fair to say that you don't think
that Mr. Newton should go to prison for something that you're
not even sure he did, is that right?"  On redirect, the
Commonwealth's Attorney questioned Harber about the
tape-recorded conversation he had with appellant's counsel.

> Q.   Was there or was there not a discussion
> about the circumstances of the buys?
> A.   Yes.
> Q.   Can you tell me whether or not you
> remember the details of the buy at that
> time?
> A.   Yes.
>
> *       *       *       *       *       *       *
>
> Q.   What opinion did you express at that
> time to [appellant's counsel] about whether
> or not the defendant was guilty or innocent?
>
> *       *       *       *       *       *       *
>
> A.   My exact reply, and this I can recall,
> was that I think the best thing that he
> could do was just plead guilty, because he
> would probably get less time, because if
> they found him guilty, they were going to
> try to put him away.

Over appellant's objection, the trial court allowed this
testimony into evidence.

Because appellant opened the door to this line of
questioning, the trial court did not err in overruling
appellant's objection to Harber's opinion testimony.  See

-

<u>Satcher v. Commonwealth</u>, 244 Va. 220, 252, 421 S.E.2d 821, 840 (1992) (allowing the Commonwealth to present contradictory testimony because the defense "opened the door"); <u>see</u> <u>also</u> <u>Kirk v. Commonwealth</u>, 21 Va. App. 291, 298, 464 S.E.2d 162, 165-66 (1995) ("Justice does not require exclusion of evidence that is probative of the central issue on trial and that the accused himself chooses to interject.").

VIII.  JURY INSTRUCTIONS

Appellant next contends the trial court improperly instructed the jury.  We disagree.  A reviewing court's responsibility in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises."  <u>Darnell v. Commonwealth</u>, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988).

During cross-examination of Harber, appellant's counsel established that Harber had used illegal drugs on numerous occasions in the past.  Counsel also questioned Harber about immunity from prosecution for these past drug offenses.  At that time, the Commonwealth's Attorney argued that the law did not grant Harber immunity for all offenses he mentioned on cross-examination and that the trial court should so inform the jury.  The trial judge agreed and at the conclusion of the evidence the trial court granted the Commonwealth's Instruction No. 11, which read:

-

The Court instructs the jury that the only offenses which Terry Harber is entitled to be immune from prosecution are the drug offenses for which Paul Ed Newton is being prosecuted. Terry Harber is not entitled to immunity for any other drug offenses which he may have testified to on cross-examination.

We reject appellant's argument that this instruction improperly advised the jury of the law. To the contrary, Instruction No. 11 correctly and clearly stated the law regarding Harber's immunity from prosecution, as codified in Code § 18.2-262. That section provides in pertinent part that "the testimony given and evidence so produced by such person on behalf of the Commonwealth . . . shall be in no case used against him nor shall he be prosecuted as to the offense as to which he testifies."[6]

---

[6]The full text of Code § 18.2-262 provides:

No person shall be excused from testifying or from producing books, papers, correspondence, memoranda or other records for the Commonwealth as to any offense alleged to have been committed by another under this article or under the Drug Control Act (§ 54.1-3400 et seq.) by reason of his testimony or other evidence tending to incriminate himself, but the testimony given and evidence so produced by such person on behalf of the Commonwealth when called for by the trial judge or court trying the case, or by the attorney for the Commonwealth, or when summoned by the Commonwealth and sworn as a witness by the court or the clerk and sent before the grand jury, shall be in no case used against him nor shall he be

> This statute creates two types of immunity. The first type is so-called "use" immunity, which applies to all crimes, and stems from the clause, "shall be in no case used against him." The second type is immunity from prosecution, or so called "transactional" immunity, which applies only to "the offense as to which he testifies." Use immunity prevents a witness's compelled testimony from being used in any way in a criminal prosecution of the witness, while transactional immunity prevents a witness from being prosecuted for the offense about which he testifies.

Caldwell v. Commonwealth, 8 Va. App. 86, 88-89, 379 S.E.2d 368, 369-70 (1989) (citations omitted).

In the instant case, Harber was not compelled by the Commonwealth to testify about any other drug offenses he may have committed on previous occasions. Instead, this evidence was established during appellant's cross-examination of Harber. As we noted in Caldwell, "[i]t is illogical to conclude that the General Assembly intended to provide immunity for any crime about which a person may at any time testify even if he was not compelled to do so." Id. at 89, 379 S.E.2d at 370.

By delineating the offenses for which Harber was entitled to be immune from prosecution, Instruction No. 11 addressed the

---

> prosecuted as to the offense as to which he testifies. Any person who refuses to testify or produce books, papers, correspondence, memoranda or other records, shall be guilty of a Class 2 misdemeanor.

(Emphasis added).

-

extent of his transactional immunity.  Under Code § 18.2-262, it is clear that Harber was entitled to immunity from prosecution only on the drug offenses for which appellant was charged and for which Harber testified at the Commonwealth's request.  Accordingly, we hold that the trial court did not err in granting the instruction.

The second instruction objected to by appellant was Instruction No. 13, which read:

> The Court instructs the jury that a report of analysis duly attested by the person performing such analysis or examination in any laboratory operated by the Division of Forensic Science shall be prima facie evidence as to the custody of the material described therein from the time such material is received by an authorized agent of such laboratory until such material is released subsequent to such analysis or examination.

Appellant contends this instruction "singled out for emphasis one part of the evidence."  We disagree.

"When a trial judge instructs the jury in the law, he or she may not 'single out for emphasis a part of the evidence tending to establish a particular fact.'"  Terry v. Commonwealth, 5 Va. App. 167, 170, 360 S.E.2d 880, 882 (1987) (quoting Woods v. Commonwealth, 171 Va. 543, 548, 199 S.E. 465, 467 (1938)).  "On the other hand, instructions should relate to the specific evidence of the case; abstract propositions of law do little to help and much to much mystify a jury."  Id. at

-

170-71, 360 S.E.2d at 882 (citing Gordon v. Director General, 128 Va. 426, 433, 104 S.E. 796, 798 (1920)).

Here, the Commonwealth presented testimony through lab technicians to show that the powder appellant sold Harber was cocaine.  On cross-examination, appellant's counsel questioned one of the lab technicians about other individuals in the lab who handled the cocaine but who were not present to testify. Appellant's counsel questioned another lab technician about who might have had access to the cocaine when it was in his drawer at the lab.

While Instruction No. 13 referred to certain evidence, it did not suggest that specific evidence compelled any particular finding and it did not comment upon specific facts proven in the case.  Rather, the instruction informed the jury of the correct law regarding the chain of custody of evidence submitted to the Division of Forensic Science.  The jury was free to draw all reasonable inferences from the evidence without any undue suggestion in the jury instruction as to the conclusion.  See id. at 171, 360 S.E.2d at 882.  Therefore, we hold that Instruction No. 13 did not impermissibly highlight a portion of the evidence.

IX.  TRIAL JUDGE'S COMMENTS TO JURY FOREPERSON

During trial, appellant elicited testimony from various Drug Task Force members that appellant had previously provided

-

information about problems in the Lee County Sheriff's Office. This information was contained in a written debrief. Appellant attempted to show that he was targeted by the Lee County Sheriff's Office in retaliation for his statements in the debrief. Although the Commonwealth's Attorney attempted to introduce the entire debrief, the trial court held that other information in the written statement was not relevant to the instant charges and that the information was too prejudicial to appellant. Thus, the debrief was not admitted as evidence.

During jury deliberations, the jury foreperson asked the court for a copy of the written debrief. The trial judge responded, "If you don't mind, tell them that I overruled allowing the introduction of the debrief because I thought it would be too prejudicial to the defendant, and it's not available." The juror returned to the jury room and at that time, appellant objected and moved for a mistrial, which was denied by the trial court.

We do not reach the merits of appellant's argument because the issue is barred by Rule 5A:18. The holding in Quesinberry v. Commonwealth, 241 Va. 364, 402 S.E.2d 218, cert. denied, 502 U.S. 834 (1991), is dispositive. Addressing a similar scenario, the Supreme Court wrote:

> After the jury had retired to deliberate and fix punishment, the jury returned and requested that the court define

-

the following words which appeared in some of the jury instructions: culpable, moral turpitude, quantitatively, and qualitatively. The court, without objection from counsel, read the definitions to the jury. After the jury had returned to the jury room to continue its deliberations, Quesinberry then objected to the definitions given by the court. Quesinberry failed to preserve his objection because he did not object timely and his argument is procedurally barred.

Id. at 380, 402 S.E.2d at 228.

In the instant case, the trial court, without a contemporaneous objection from counsel, told the jury foreperson that the written debrief was not entered into evidence because of its prejudicial nature. It was not until after the foreperson returned to the jury room to continue deliberations that counsel then objected to the trial court's statement. Appellant failed to preserve his objection because he did not object timely. See Rule 5A:18.

For the foregoing reasons, we find no reversible error and affirm appellant's convictions.

Affirmed.

-