COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, White and Senior Judge Annunziata

JAMES LEVI MCDONALD

MEMORANDUM OPINION[*] BY
v.        Record No. 0941-24-4         JUDGE KIMBERLEY SLAYTON WHITE
                                       FEBRUARY 3, 2026
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel T. Lopez, Judge

(Peter M. Baskin; Peter M. Baskin, P.C., on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Anna M. Hughes, Assistant
Attorney General, on brief), for appellee.

Appellant James McDonald was charged and convicted of possession with intent to

distribute three controlled substances (LSD, marijuana, and psilocyn), and possession of a

firearm while in possession of controlled substances. He makes eight assignments of error that

we group into five categories. (A) The trial court erred by admitting evidence discovered from a

warrant that lacked probable cause (assignment of error 1). (B) The trial court erred in finding

actual or constructive and contemporaneous possession of controlled substances and a firearm

based on the evidence (assignments of error 2 and 8). (C) The trial court erred in allowing

testimony and evidence about prior crimes not charged against McDonald (assignment of error

3). (D) The trial court erred in granting the Commonwealth's instructions (10, 11, 12, 14, 15,

and 16) that did not include the date of alleged possession, in failing to instruct the jury that

possession must be contemporaneous with knowledge and intent, and in failing to instruct the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

jury on proximity, dominion, and control in establishing constructive possession (assignments of error 4, 5, and 6).[2]  Finally, (E) the trial court erred in preventing McDonald from complying with the contemporaneous objection rule during closing argument (assignment of error 7).

Following a description of the facts relating to these assignments of error, we address the merits of McDonald's arguments.  We affirm the trial court's judgment.[3]

## I.  BACKGROUND

On August 16, 2022, a postal inspector observed a damaged priority mail package to be delivered that same day from Long Beach, California, addressed to "James M" at the address where McDonald resided in Arlington, Virginia (the "Arlington Address").  Visible through the packaging was what appeared to the inspector to be controlled substances—suspected psilocybin mushrooms of about 9.5 ounces and suspected marijuana edibles.  The inspector turned the package over to the Arlington County Police, not to be delivered to the intended address.  Police were able to determine that McDonald was "associated with" the Arlington Address.  The postal inspector subsequently discovered and notified law enforcement about a second package from Long Beach to be delivered to "James M" at the Arlington Address on August 19.  An Arlington officer observed McDonald pick up the package from the front porch of the Arlington Address and bring it into the house on the date appointed for delivery.  Finally, the postal inspector discovered a third package due for delivery on August 22 to be delivered to "James M" at the Arlington Address.

---

[2] For this third part, McDonald mentions his own proffered Instructions B, C, D, and H. However, he develops the issue only with regard to Instruction C and so waives any assignment of error with respect to the others for failure to develop the issue on brief.

[3] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."  *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

On August 22, 2022 police obtained a search warrant for the house at the Arlington Address. The warrant authorized the search for evidence of possession of and intent to distribute controlled substances in violation of Code § 18.2-248 and Code § 18.2-248.01. The affidavit submitted in support of the search warrant highlighted the officer's "extensive training in drug identification, drug distribution methods, and drug enforcement techniques . . . ." It also contained eight lengthy statements about what drug traffickers and drug users "commonly" do in the course of their illegal activities related to concealment of evidence, maintenance of transactional information, communications, record-keeping, possession of paraphernalia, etc. The warrant authorized a search for "evidence of the crime of Possession with Intent to Distribute of a controlled substance . . . ." Items appearing in a non-exhaustive list included "documents, USPS mail packages, . . . scales, packaging materials, phone records, . . . firearms, . . . computers, cellular phones, business records." Facts specific to McDonald himself included his connection to the packages, his connection to the Arlington Address, and McDonald's previous arrests for drug possession.

On August 22, officers executed the search warrant on the Arlington Address. One officer testified that while executing the warrant, he observed a "red object caught out of the corner of my eye to the rear of the residence" (also a "flash of red") near the back deck.[4] After approaching the rear of the house, that officer saw McDonald in the back yard moving toward him from a direction he believed would be "behind" a shed, though he testified that he did not see him behind the shed. After arresting McDonald, the officer found a red backpack with the word "Cookies" on it in the corner of the yard between the shed wall and a fence (the place behind the shed from where he believed McDonald had emerged). The backpack contained controlled substances, including two bags of marijuana, a bag of psilocybin mushrooms, and a

_____

[4] The "flash of red" can be seen in stills of Luzier's body cam as well as the video itself.

bag of LSD tabs. When asked whether he could say for sure that the red flash was the red backpack he found near the shed, the officer responded, "For 100 percent, no I cannot." Another officer, also at the residence executing the warrant, testified that there was nothing in the bag with McDonald's name on it.

Police then searched the residence at the Arlington Address. They searched an upstairs room that had its own key access, a bed, a sitting area, a kitchenette, and a bathroom. The room's interior door, which officers believed "originally led to the rest of the house," was "sealed off" with "tape around the seams" and "fabric or cardboard" covering it. It was also locked and had a desk in front of it, leaving the doors to the back and front decks as the only access points to the room. Additionally, only the back deck had a stairway leading up to the door.

Inside the upstairs room at the Arlington Address, they found THC cartridges, marijuana residue and stems, a firearm, ammunition, electronics, postal boxes, and items with McDonald's name on it. Some items were mailings to the Arlington Address with McDonald as the recipient; bank statements, envelopes, and cards with his name on them; a handwritten card in an ID window of a wallet with his name and the Arlington Address listed; drug paraphernalia; a backpack with a "cookies" logo similar to the one found by the shed; and a firearm with an extended magazine. One officer who was present at the execution of the warrant testified that no documentation belonging to any other individual besides McDonald was found in the room associated with McDonald. McDonald was arrested and charged with the four counts for which he was subsequently convicted.

At trial, testimony and evidence of all the facts above were admitted to the record and the Commonwealth proceeded to introduce testimony and evidence of text conversations taken from McDonald's phone. In all, six conversations were introduced into evidence occurring on or over

the following dates and date ranges in 2022: July 3-26, July 31, August 13, August 14, August 20, and August 21. Included in the messages from McDonald are, among other things, that "[t]he gas and carts and acid and shrooms sells like crazy for me," that he's probably "gonna sell out ASAP" of certain narcotics, and that "8 tabs" cost $100 for a person he has "served . . . before." The Commonwealth utilized expert testimony from a narcotics officer who described his training and experience with narcotics enforcement, specifically his knowledge of slang and terminology used in the possession and sale of narcotics. This officer testified that he had read the messages from the phone and that messages from McDonald about narcotics were "inconsistent with personal use." He also explained narcotics slang terminology, such as that "gas" refers to marijuana, "carts" refer to THC cartridges, "acid" refers to LSD, "shrooms" refer to psilocybin mushrooms, and "tab" refers to gel tabs of LSD. Further, he testified that to "serve" substances means to sell or distribute substances.

McDonald objected to this evidence, arguing "anything older than 30 days . . . seems to be the outer limit for staleness for the issuance of a search warrant," and that the messages were irrelevant to whether McDonald possessed the drugs on August 22, 2022 and "could be suggestive of other crimes, which is improperly prejudicial to the defendant." The trial court rejected McDonald's staleness argument, saying "staleness is more associated with when a search warrant is served. But looking at the first package of text messages, June 25th, 2022, just a few months leading up to August clearly would go to what's happening at that time period." The trial court further explained that the messages are relevant to inferences regarding the facts "that drugs are ordered, you have to wait, you have to send money" and that drug distribution is "not an instantaneous event, and that takes some[] planning." The court also overruled McDonald's relevancy objection, finding that the messages were "not remote in time . . . it's just a few months before the date that [police] searched the house." Finally, the trial court also

overruled McDonald's objection that the text messages were evidence of other crimes and that their prejudicial effect outweighed any probative value because of their temporal distance from the possession on August 22, 2022.

At the close of the Commonwealth's evidence, McDonald again objected to the text message evidence specifically, asking the trial court to strike all the phone message evidence, since they "all show evidence of other crimes which are not prosecuted and which demonstrate a prejudice beyond any probative value on the issue of possession and presence on the premises when the drugs were there."  The trial court rejected this assertion and stated that any prejudice was "slight" and did not significantly outweigh the "very weighty relevance" of the text messages.

McDonald renewed his motion to strike saying "he was not nearly proximate to the drugs in either location."  The trial court responded that McDonald was found "close to" the backpack, which contained "the very same drugs that he told somebody . . . that he had ready for sale, and that he had them right now and he had them ready to sell to that person, and that he had an intent to sell drugs," as evidenced by the fact that McDonald had "sold them in the very recent past related to the 22nd of August."  McDonald appeals.

## II.  ANALYSIS

### A.  The Sufficiency of the Affidavit in Support of the Warrant

McDonald filed a motion to suppress the evidence gained from the execution of the search warrant, which was denied by the trial court.  "In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth."  *Marlbrough v. Commonwealth*, 275 Va. 163, 168 (2008).

Although McDonald admits that at least one of the packages provides a factual nexus to the residence at the Arlington Address, he argues that because the contents of package two was unknown at the time the warrant was issued, there is no factual nexus between the evidence sought and the residence at the Arlington Address. He asserts that there was not enough evidence alleged in the affidavit for the magistrate to determine there was sufficient probable cause to issue the search warrant. As an appellate court reviewing a magistrate's probable cause determination, we must consider "whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed." *Williams v. Commonwealth*, 4 Va. App. 53, 68 (1987) (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). The magistrate's determination "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236.

"[T]he affidavit supporting the issuance of the warrant for a residence must provide a nexus between the contraband sought and the place to be searched." *Cunningham v. Commonwealth*, 49 Va. App. 605, 613 (2007). In the case now before us, the affidavit describes the existence of all three packages, the controlled substances found in the first package, the common origin and sender of all three packages, the "James M" recipient on all three packages, the reception of the second package by McDonald at the Arlington Address, and McDonald's association with the Arlington Address. In denying the motion to suppress the trial court stated that, "[t]hese facts, which occurred within days of the search, provided sufficient probable cause for the magistrate to find that evidence of possession with intent to distribute . . . or transportation . . . would be present at that address when the officer sought the warrant." We agree with the trial court and find that the magistrate made "a practical, common-sense decision" based on the information provided that "a fair probability [existed] that contraband or evidence of a crime [would] be found in a particular place." *Gates*, 462 U.S. at 238-39.

B.  Sufficiency of the Evidence for Possession

McDonald argues that, though the Commonwealth had "shown tons of evidence of intent to distribute" controlled substances, it had not provided sufficient evidence to show possession. This analysis, therefore, focuses on the sufficiency of the evidence of possession for both the controlled substances and the firearm.

"We review the sufficiency of the evidence in the light most favorable to the Commonwealth." *Farhoumand v. Commonwealth*, 288 Va. 338, 351 (2014).  "[I]f there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial." *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 224 (2013)).  "[T]he relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010).

Since there were no controlled substances or firearms found on McDonald at the time of his arrest, the jury convicted him on the basis of constructive possession.  "Constructive possession of contraband may be shown by proof that the substance is known to the defendant and subject to his dominion and control." *Garland v. Commonwealth*, 225 Va. 182, 184 (1983). "While an accused's occupancy of the premises does not give rise to a presumption of possession, this factor may be considered with other evidence in determining whether a defendant constructively possessed drugs." *Id.*  "And, circumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Dowden v.*

*Commonwealth*, 260 Va. 459, 468 (2000). To prove guilt, the Commonwealth "is only required to exclude hypotheses of innocence that flow from the evidence." *Id.*

McDonald cites several cases purporting to be analogous to his own, showing that there was insufficient evidence to establish possession. However, they are all distinguishable from this case. In *Garland*, the only ties between the defendant and the residence were a lease with his name on it, an expired operator's license, and clothing that would have fit the defendant. 225 Va. at 184. In *Lowe v. Commonwealth*, 36 Va. App. 163, 168 (2001), the defendant resided at the home and had been present there on previous occasions, but he was not the only person with access, there were other people at the house on the same day, and "[n]o evidence showed the [defendant] had been at the house . . . during a period from which the finder of fact could reasonably conclude [the defendant] constructively possessed the marijuana." In *Cordon v. Commonwealth*, 280 Va. 691, 693 (2010), the house in question belonged to his uncle and he listed his residence elsewhere. Finally, in *Carter v. Commonwealth*, No. 0315-21-3, slip op. at 10, 2022 Va. App. LEXIS 72, at *14, *15, *17 (Mar. 15, 2022), there was evidence that the defendant used the residence as his address and had lived there in the past, but there was no evidence he had been there the previous four days, the paperwork found inside the home tying defendant to the residence was not recent, and someone else was in the residence when police arrived to search it.

Turning to the case now before the Court, the packages were addressed to "James M." McDonald was observed retrieving one of the packages just a few days before the execution of the search warrant at the Arlington Address. During the execution of the search warrant, McDonald also was observed coming from the area of the yard of the Arlington Address where a backpack containing controlled substances was discovered. The room where more controlled substances and the firearm were found also contained numerous documents bearing McDonald's

name, and no one else's. Some of those documents also listed the Arlington Address as that of McDonald. A backpack of the same color and displaying the same logo as that retrieved from the yard was also in the room.

Also relevant to the analysis is the configuration of the room itself. The entrance to the room had been modified so that one could not gain access from the inside of the house. One could only get into the room from an outside staircase leading to a deck off the room. In addition, the room was secured by lock and appeared to be self-sufficient in that it contained an area for a kitchenette, a sitting area, and a bed. With the room, there also was a bathroom.

Additionally, McDonald's own phone messages add to evidence establishing the fact of McDonald's knowledge and control of the narcotics. He mentions getting "re-ups" (or replenishment of narcotics) numerous times, indicating that he both had possession of and intended to obtain contraband. In a message four days after a postal inspector alerted police about a damaged package with the appearance of drugs addressed to "James M" at the Arlington Address, McDonald writes that the "mail man stole one of my packadged [sic] with [3.5-gram packages of marijuana] and pound of shrooms," which is what appeared to be in the damaged package confiscated by the postal inspector. Just nine days before police executed the search warrant, in response to a query about "tabs," McDonald asks for payment and says "I'm [home] just chilling" and "I'll get it ready [right now] for ya." Finally, on the day before police executed the search warrant, in response to another query about whether he has "tabs," McDonald says he has those as well as "shrooms and gas and carts," which were all found at the execution of the search warrant.

In our limited role as an appellate court reviewing whether this evidence was sufficient to establish guilt of the possession offenses, "[t]he only 'relevant question is . . . whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt.'" *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (alterations in original) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)).  The answer to that question is a resounding, "yes."

### C.  Allowing Testimony and Evidence of Prior Criminal Activity

McDonald objected to the admission of evidence of "prior crimes not charged" based on text conversations that officers took from his phone.  He claimed that they "could be suggestive of other crimes, which is improperly prejudicial to [McDonald]."  The trial court explained that the reason for including the text messages was to lay the foundation for the continuing process of ordering drugs in order to arrange sales.  The evidence includes six conversations occurring concurrently over most of July and the first part of August leading up to McDonald's arrest, all of which pertained to transactions involving drug sales.  The trial court also rejected arguments that the text messages were irrelevant and that the prejudice to McDonald outweighed their probative value, saying the prejudice was "slight" and the text messages were of "very weighty relevance."

"In reviewing the admissibility of evidence, we apply an abuse of discretion standard of review."  *Thomas v. Commonwealth*, 279 Va. 131, 168 (2010).  "Generally, 'evidence has relevance if it "tends to cast any light" on any material point.'"  *Turner v. Commonwealth*, 65 Va. App. 312, 329 (2015) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753 (2005)).  "The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.  The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse."  *Id.* at 329-30 (quoting *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990)).

"While proof of 'other crimes' is inadmissible to show a defendant's criminal disposition, such evidence is admissible 'if it *tends to prove* any relevant element of the offense charged.'"  *Newton v. Commonwealth*, 29 Va. App. 433, 453 (1999) (quoting *Guill v. Commonwealth*, 255 Va.

134, 138 (1998)). "[H]owever, most relevant evidence offered by the Commonwealth in a criminal case is potentially damaging to a defendant." *Turner*, 65 Va. App. at 330. "Such evidence is permissive in cases . . . where the evidence is *connected with* or *leads up to* the offense for which the accused is on trial." *Newton*, 29 Va. App. at 453 (quoting *Pavlick v. Commonwealth*, 27 Va. App. 219, 226 (1998) (en banc)).

The evidence highlighted above connects McDonald to the Arlington Address residence and establishes the existence of controlled substances found in the backpack and residence. McDonald's text messages detail plans to sell the exact same types of substances found in both the red backpack from outside and another backpack (covered in the "Cookies" logo) found inside the Arlington Address residence. Additionally, these text messages indicate the contraband's origin was California and that McDonald believed the "mail man stole one of my packadged [sic] with [3.5-gram packages of marijuana] and pound of shrooms."

The circumstantial evidence indicates that McDonald had possession of the controlled substances, and the text messages add light to his knowledge of and control over the substances as well as his intent to distribute them. "[W]here a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial." *Newton*, 29 Va. App. at 454 (quoting *Scott v. Commonwealth*, 228 Va. 519, 526 (1984)).

A reasonable jurist could find the text messages were relevant to establishing an element of the crimes and that their probative value outweighed any prejudice to McDonald. Text messages in the two months leading up to the execution of a warrant establishing possession of controlled substances are relevant to showing knowledge of, the acquisition process for, and the preparation and intent to distribute the substances. Consequently, there was no abuse of discretion by the trial court in admitting the text messages into evidence.

## D. Jury Instruction Errors

McDonald argues that the trial court erred in rejecting his proposed jury instructions; in failing to instruct the jury that possession must be contemporaneous with knowledge and intent; and in failing to instruct the jury on proximity, dominion, and control for constructive possession.

"On appeal, a trial court's decision to give or deny requested jury instructions is reviewed for an abuse of discretion." *Jordan v. Commonwealth*, 84 Va. App. 446, 473 (2025) (citing *Davis v. Commonwealth*, 79 Va. App. 123, 152 (2023)). "An appellate court's 'responsibility in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises."'" *Id.* (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)).

The entire section of appellant's brief addressing alleged jury instruction errors cites to one case—a case from which language used in a defense proposed instruction comes. The remainder of his argument contains conclusory statements and undeveloped assertions. "With respect to each assignment of error, the standard of review and the argument . . . must be stated in one place and not scattered through the brief." Rule 5A:20(e). "[W]e have repeatedly stated how undeveloped arguments 'do not merit appellate consideration.'" *Sfreddo v. Sfreddo*, 59 Va. App. 471, 494 (2012) (quoting *Reid v. Commonwealth*, 57 Va. App. 42, 48 (2010)). "Rule 5A:20(e) requires a party to include in his brief: 'argument—including principles of law and the authorities,' for each assignment of error." *Conley v. Commonwealth*, 74 Va. App. 658, 681 (2022) (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017)).

> A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research. To ignore such a rule by addressing the case on the merits would require this court to be an advocate for, as well as the

> judge of the correctness of, [appellant's] position on the issues he raises.

*Jones v. Commonwealth*, 51 Va. App. 730, 734-35 (2008) (alteration in original) (quoting *People v. Trimble*, 537 N.E.2d 363, 364 (Ill. App. Ct. 1989)).  Appellant's allegations of error concerning jury instructions is waived.[5]

### E.  The Contemporaneous Objection Rule

McDonald argues that the trial court erred by preventing him from complying with the contemporaneous objection rule.  The court overruled objections made by McDonald during the Commonwealth's closing argument but stated that he could specify further the grounds for the objections after the Commonwealth's closing argument was completed.  The trial court then entertained the objections with specificity and overruled them after closing arguments.  Our consideration of this issue is limited to McDonald's specific allegation of error.  Importantly, he does not object to the ruling of the trial court on the substantive issue but instead to the timing of the ruling and the procedure followed.

The contemporaneous objection rule is one long standing and well known.  "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable th[e] Court [of Appeals] to attain the ends of justice."  Rule 5A:18.  "The purpose of the contemporaneous objection rule 'is to avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.'"  *Maxwell v. Commonwealth*, 287 Va. 258, 264-65 (2014) (quoting *State Highway Comm'r v. Easley*, 215 Va. 197, 201 (1974)).

---

[5] Appellant also assigns error to the trial court's insertion of "on or about" language into the jury instructions.  There is no indication from the record that any of the jury instructions contained "on or about" language.

- 14 -

"Appellants generally waive their right to appeal if they do not specifically and timely state their objections." *Holman v. Commonwealth*, 77 Va. App. 283, 297 (2023).

McDonald asserts no complaint that any of his objections have not been preserved at trial, nor does he offer any argument that he was prevented from placing any issue on appeal due to his failure to comply with the contemporaneous objection rule. In fact, the trial court invited McDonald's attorney to provide more argument in support of his objections. After he did so, the trial court affirmed his previous overruling of his objections. Instead, he claims on brief that the trial court's failure to hear the objections during the Commonwealth's closing argument was prejudicial to him because the jury heard argument it should not have heard immediately before deliberations. However, this argument addresses the substantive grounds for the objection, an issue that is not stated in the assignment of error. It is not relevant to the issue of the timing of the objections and the procedure followed by the trial court and therefore cannot be addressed by this Court. Thus, this assignment of error has no merit.

## III. CONCLUSION

For the foregoing reasons, the rulings of the trial court are affirmed.

*Affirmed.*